# LOCHWITZ et al. v. PINE TREE MINING & MILLING COMPANY.

No. 2092.   Decided April 5, 1910 (108 Pac. 1128).

1. CORPORATIONS—OFFICERS—POWERS OF PRESIDENT. Under Comp. Laws 1907, secs. 315, 324, providing that the corporate powers of a corporation shall be exercised by the board of directors, which shall not be less than three nor more than twenty-five, etc., the president of a corporation has ordinarily only the powers of a director, or such as may be directly conferred on him by the board of directors.   (Page 355.)

2. CORPORATIONS—OFFICERS—BOARD OF DIRECTORS—QUORUM. Under Comp. Laws 1907, secs. 315, 324, providing that the corporate powers of a corporation shall be exercised by the board of directors,

consisting of not less than three nor more than twenty-five, and that a majority of a quorum when duly assembled may bind the corporation, a quorum of the board of directors must act as a unit when discharging or authorizing any one to execute corporate powers. (Page 355.)

3. CORPORATIONS—OFFICERS—POWERS. Where the president and secretary of a corporation entered into an option contract for the sale of corporate property for a fixed price payable in installments, pursuant to the authority of the board of directors to the president and secretary to contract for the sale of the property for a specified price, the president alone had no authority to extend the time of the payment of any installment; the contract making time of the essence. (Page 356.)

4. CONTRACTS—OPTION CONTRACTS—MODIFICATION—EFFECT. Where an option contract for the purchase of property for a fixed price payable in installments on designated dates, made time of the essence, an extension of the time of the payment of the first installment is a modification of an executory agreement, and, in effect, the entering into of a new agreement. (Page 357.)

5. CORPORATIONS—RATIFICATION OF UNAUTHORIZED ACT. Where a corporate power is required to be exercised in a particular manner, a ratification of an unauthorized exercise of the power must be effected in such manner. (Page 357.)

6. CORPORATIONS—ACTS OF OFFICERS—RATIFICATION. The president and secretary of a mining corporation, pursuant to authority from the board of directors, made an option contract for the sale of corporate property for a specified price payable in installments on designated dates, and made time of the essence. The president alone extended the time for the payment of the first installment. The secretary was informed of the modification, and he then wrote to the president, who was absent from the state, inquiring about it. Nothing further was done by any one until the purchaser in the option contract learned that the corporation had refused to recognize the extension of time. *Held*, that the act of the president was not ratified, and the corporation was not bound thereby. (Page 357.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Adolph Lochwitz and another against the Pine Tree Mining & Milling Company.

Judgment for defendant. Plaintiffs appeal.

Affirmed.

*Allen T. Sanford* for appellants.

*Smith & Price* for respondent.

FRICK, J.

The appellants brought this action against the respondent, a corporation, to recover damages for an alleged breach of contract. In February, 1907, appellants and respondent entered into a contract whereby it was agreed that appellants should take possession of respondent's mine and develop certain specified portions thereof by working a certain number of men for a specified time. For all ores mined and sold appellants were to allow respondent a certain per cent., denominated "royalty." As a part of the foregoing agreement, appellants were also given an option to purchase respondent's mine at the agreed price of $75,000, payable as follows: $25,000 on or before the 1st day of September, 1907, and $50,000 on or before the 1st day of December following. Time was made of the essence, and in case the $25,000 payment was not made at the time specified, or within five days thereafter, appellants, by the terms of the contract, were to forfeit all rights thereunder, including the right or option to purchase. Appellants, in effect, alleged in their complaint that in June, 1907, the option agreement aforesaid was modified by the president of respondent by extending the time of making the first payment; that respondent, after granting said extension, refused to comply with the contract as modified, excluding appellants from the mine, preventing them from marketing certain ores which they developed and which were of great value, forfeiting their rights under the option contract, and thus committing the alleged breach. The respondent, in its answer, denied that the contract was modified as alleged and further, affirmatively averred that, if the president of respondent did make the alleged modification, he did so without authority, and hence the modification, if made, was not binding on the corporation.

As we view the case, the questions for determination are: (1) Was the contract modified by the president of respondent and as contended by appellants? (2) If so, did the president act by virtue of authority so as to bind respondent? And (3) if the president acted without authority, was his act thereafter ratified so as to bind respondent? We shall, therefore, confine ourselves to a statement of the facts relating to the foregoing propositions.

The evidence adduced at the trial in support of the first proposition is as follows: One of the appellants, in stating what the president of respondent, in granting the extension of time, said, testified as follows: "Well, he said, 'I will extend you the $25,000 payment, the first payment, to the last, so when it comes due, the last payment, you will have to pay $75,000.' . . . He said, 'Yes, by the way, it might be such a thing that ought to be made in writing.' I said: 'Mr. Savage, I am no attorney. . . . If there is any writing to be done, you are the president. You and the secretary have the papers fixed up.' . . . So just before he went away I said: 'Now, Mr. Savage, we are both old people. Something may happen to one; something may happen to the other. I don't want to hurt you, and I am sure you don't want to hurt me.' . . . I said, 'Won't you tell your secretary about the extension, and please go to my attorney, Mr. Henry C. Lund, and tell him also that you have extended the time of the $25,000 payment for ninety days longer?' He said, 'I will do it.' We parted." This witness said that he did not ask for the extension; that he "didn't have gall enough to ask him (the president) for it." The extension was thus granted voluntarily by the president.

The "last payment" mentioned in the foregoing statement referred to the $50,000 payment due on or before December 1, 1907. The effect of the extension would thus have made both payments due at the same time and on the date last mentioned, and would, as appellants contend, have given them three months longer possession of the mine. Appellants did not obtain the record of the proceedings of respond-

ent's board of directors showing the authority for entering into either the original option agreement or the alleged modification thereof. They, however, called the president of respondent as a witness for the purpose of showing his authority to act, and his testimony, in substance, is that there was a meeting of the board of directors at which the authority to enter into the original agreement was by a resolution duly passed conferred upon the witness and the secretary of the company, Mr. Price; that in the resolution appellants were mentioned as the parties with whom the president and the secretary might enter into a contract, but nothing was mentioned in the resolution with regard to the terms of sale except that the consideration was to be $75,000; that the terms were not set forth in the resolution because it was not then known what terms the president and secretary would be able to obtain, and hence the matter of terms was left for them to agree upon; that there never was a meeting of the board of directors at which the modification of the contract was either discussed or passed on; that the board of directors conferred no authority upon the witness except what was contained in the resolution aforesaid.

The evidence of ratification, in effect, is that some time early in July one of the appellants went to the office of Mr. Price, the secretary of respondent, to pay him respondent's share of the proceeds derived from the sale of ore taken from the mine under the contract; that at that time the witness informed Mr. Price that the president of respondent had granted an extension of ninety days' time, and Mr. Price said he knew nothing about it. The witness then repeats what he told Mr. Price, as follows: "I said, 'Strange! Mr. Savage (the president) was out there (at the mine) a month ago, and he volunteered to give me that (the extension) without even asking for it. . . . Be kind enough to look into it and find out.' Something like that I said, and he (Mr. Price) said he would."

Nothing more appears to have been done or said about the alleged ratification until August 29, 1907, about two days before the first payment was due by the terms of the

37 Utah—23

original contract. About this time appellants sold and transferred their interest in the option contract to one Schenck upon the representation by them that they had obtained an extension of ninety days in which to make the first payment. One of the appellants again went to see Mr. Price, the secretary, to inform him that they had sold their interest in the option contract. The question then came up about the payments, and, the witness again claimed that an extension of time had been granted by Mr. Savage, the president of respondent. Mr. Price again said that he knew nothing about it. Mr. Price, then, in the presence of the witness, dictated a letter to Mr. Savage, the president, who was, and for some time prior thereto had been, absent from the State of Utah; and, as the witness says, Mr. Price did this to "find out something about it." The witness, in relating what he said to Mr. Price at that time, proceeds, as follows: "I said: 'You can do whatever you please. You can't fool me with nothing. I know all about it.'" With respect to what Mr. Price wrote to Mr. Savage, the witness says: "As near as I can remember, he said, 'Mr. Lochwitz (the witness) is claiming an extension, and, if so, I do not know anything about it.' Or at least he didn't know anything about it. . . . He said, 'I am going to send that letter to-day, and we are going to get back the answer from Mr. Savage in about four or five days.'" Counsel for appellant then asked the witness: "Calling your attention to the dictation of that letter was there anything said with reference to Mr. Savage letting him know whether he had made such an extension?" The witness answered: "Yes, sir; he said to let him know." The witness further said that he heard no more about the matter until he learned that respondent had entered into a contract with some one else and had refused to recognize the extension of time.

Upon substantially the foregoing evidence, the court, upon respondent's motion, granted a nonsuit; and in making the ruling the court said, "No authority is shown for the making of the extension." Counsel for appellants strenuously insists that in view of the evidence the president of respondent

had the authority as a matter of law to grant an extension; that he granted it; and that, if the evidence failed to show authority on the part of the president to grant an extension, the respondent is nevertheless, bound, because the president's act was ratified by the secretary of the company. Are these contentions sound? The power of corporate officers or directors to act as the agent of the corporation may be affected in three ways: (1) By the statutes of the state in which the corporation is created; (2) by the articles of incorporation; and (3) by the by-laws of the corporation. If not so regulated, the exercise of the corporate powers are controlled by the common law. In this state, by virtue of section 324, Comp. Laws 1907, "the corporate powers of a corporation shall be exercised by the board of directors." By the same section it is provided that, if the number of directors constituting a quorum is not fixed by the articles of incorporation, a majority of the board of directors shall constitute a quorum, a majority of whom, when duly assembled, may bind the corporation by their acts. Section 315, among other things, provides that the board of directors of any corporation shall not be less than three nor more than twenty-five, and a quorum shall not be less than one-fourth of the whole number of directors. Under our statute, therefore, the president, as such, of a corporation, has ordinarily only the powers of a director, or such as may **1, 2** be directly conferred upon him by the board of directors. Again, under statutes similar to ours, a quorum of the board of directors must act as a unit when discharging or when authorizing any one to execute corporate powers. (4 Thompson on Corps. 4619; 10 Cyc. 775.) The rule is well and tersely stated in Cyc. in the following language:

"The board of directors to whom the authority to bind the corporation is committed is not the individual directors scattered here and there, whose assent to a given act may be collected by a diligent canvasser, but it is the board sitting and consulting together in a body. Individual directors, or any number of them less than a quorum, have no authority as directors to bind the corporation. And this is equally the rule, although the director who assumes to do so may own a majority of the shares."

Nothing is made to appear from the record with respect to how many directors constitute the board of respondent. All that does appear is that there were at least four directors chosen at some time. Nor does it appear how many of the board constitute a quorum. As we have seen, it does appear, however, that the directors held a meeting at which they authorized the president and secretary of respondent to enter into the original option contract with appellants, and that the board took no further action upon that subject. The evidence is also beyond dispute that the president alone volunteered to grant appellants the alleged extension. This was therefore an attempted modification of an existing executory agreement. In legal effect it was entering into a new agreement. Applying the law to the undisputed facts, if we assume that what the president did amounted to an extension of time in fact, yet we think it is clear that as a matter of law such an extension was not binding upon the respondent because the president was legally powerless to grant it. But counsel for appellant seriously contends that the acts of the president were ratified and thus became binding on the corporation. We have set forth the effect of all the evidence upon the question of ratification. We are of the opinion that as matter of law it falls far short of establishing any of the elements of a ratification of an executory contract or agreement. As we have pointed out, under our statute the powers of the corporation must be exercised by a quorum of the board of directors when assembled as a body. The president, therefore, could not make a binding contract nor modify an existing one unless authorized to do so by such a quorum. In the resolution testified to by the president it required the joint act of the president and the secretary to make a binding contract. This they did by entering into the original option agreement. Nothing is made to appear from which it could be inferred that the president and the secretary could enter into more than one agreement with appellants. But, assuming that the powers of the president and secretary were not exhausted when they had executed the original option

contract, yet the modification or new agreement was not made by the president and secretary, but was made by the president alone. The resolution of authority gave him no power to act alone. His individual act was, therefore, of no binding force or effect upon respondent. Did the secretary ratify the act of the president? Did he have the power to do so without acting jointly with the president? The general rule that, where a corporate power is required to be exercised in a particular manner, a ratification of an unauthorized exercise of such power must, in order to bind the corporation, be effected in the same manner that is required of the exercise of the original power. In 3 Cl. & Marsh. on Private Corps. the rule is admirably stated, at page 2190, in the following words:

"If it is necessary that authority to do a particular act or enter into a particular contract shall be given in a certain mode, either by reason of a mandatory charter or statutory provision, or by reason of the common-law rule, ratification of such act or contract must be in the prescribed form or mode. 'The ratification of an act, done by one assuming to be an agent, relates back, and is equivalent to prior authority . . . When, therefore, the adoption of any particular form or mode is necessary to confer the authority in the first instance, there can be no valid ratification except in the same manner.' Thus, if a corporation can only authorize a particular act or contract by a power under seal, or by formal vote, ratification of such an act or contract must be under seal or by a formal vote, as the case may be."

See also *Despatch Line, etc., v. Bellamy, etc., Co.*, 12 N. H. 205, 37 Am. Dec. 203; *Blood v. La Serena, etc., Co.*, 113 Cal. 221, 41 Pac. 1017, 45 Pac. 252.

Neither the facts nor the law, therefore, warrant the conclusion that there was any intention or effort to formally ratify the act of the president in modifying the original agreement. Is the evidence such as would warrant a jury to find that Mr. Price, as the secretary of the company, ever manifested an intention to or did ratify the president's act. We think not. All that there is in the evidence is that Mr. Price was informed by one of the appellants that the president had modified the contract by granting an extension of time in which to make the

first payment. Whether any other provision of the contract was modified, or whether all other provisions were to remain in force notwithstanding the alleged modification, it seems, no one knew. In view of the nature of the contract and its numerous provisions to merely inform Mr. Price that the time of making the first payment had been extended, it was hardly sufficient to enable him to act intelligently if he felt disposed to do so with respect to ratifying the president's alleged modification of the original contract. Price therefore acted as any prudent man would have done under the circumstances. He wanted to know what the president had done, and this it was not only his duty to ascertain, but, we think, clearly was his privilege before he was required to act. In view that the president was absent from the State of Utah when Mr. Price was told of the extension of time, it seems he did not communicate with the president, and, when the time arrived for the appellants to make the first payment, Mr. Price still insisted that he had no knowledge with regard to the alleged extension of time, and, in the presence of one of the appellants, dictated a letter to the president, who was still absent from the state, to ascertain from him the facts with regard to the alleged modification of the original option agreement. If there is the slightest evidence of an intention to ratify or of a ratification of the president's act in granting the extension of time by Mr. Price, we fail to see it. Merely informing Mr. Price that the president had modified the contract was, under the circumstances, and in view of the nature of the contract, not enough to require him to act either one way or the other. If it be the law that, if one director enters into an unauthorized contract, the corporation is bound because one or more of the other directors were informed of what the first director had done, then an easy way has been discovered by which corporate contracts and obligations may be either created or modified to the detriment, if not ruin, of both the corporation and the innocent stockholders. Such is not the law. There are circumstances under which notice to a single director, or to individual directors, or to an officer,

or particular agent of the corporation, may be notice to the corporation itself, and in this connection it may be that under peculiar circumstances the corporation would be held to have notice of the unauthorized act or contract so as to require it to take some timely action with regard to it, and in case it failed to do so it might be sufficient to estop it from afterwards repudiating the unauthorized act or contract. This rule, however, can have no application to facts and circumstances such as are disclosed by the evidence in this record. (4 Thompson on Corps., secs. 5221, 5307; 3 Cl. & Marsh. on Corps., sec. 718.) This doctrine is well illustrated and applied in *First Nat. Bank v. Drake,* 29 Kan. 311, 44 Am. Rep. 646, where will be found a very interesting and instructive discussion upon the subject by Mr. Justice Brewer.

In view of the whole evidence, no jury would have been authorized to find that there had been either a formal ratification of the president's act in granting the extension of time, nor that the respondent was estopped from ignoring the alleged extension of time by reason of anything that Mr. Price did or omitted to do. The court, therefore, did not err in granting the motion for a nonsuit. In view of this conclusion, the other matters discussed by counsel became immaterial.

The judgment is, therefore, affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.