# Richmond

MASON B. STARRING, ET ALS. *v.* GEORGE S. KEMP, ET ALS.

November 12, 1936.

Present, Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Hunton, Williams, Anderson, Gay & Moore, Wirt P. Marks, Jr.,* and *Stephen H. Simes,* for the appellants.

*Hunsdon Cary,* for the appellees.

*Parrish, Butcher & Parrish,* for Hunsdon Cary, Esq., attorney.

HOLT, J.,* delivered the opinion of the court.

In October, 1934, George S. Kemp, H. L. Cabell, Alex Cameron, Jr., Edward J. Willis, Mrs. Jonathan Bryan, Agnes Sitterding, W. R. Bowers, J. L. Moon, Thomas J. Nichols, Thomas J. Nichols, Jr., Charles C. Kitzmiller, American Peanut Company, Charles S. Jackson, George Tasker, Bank of La Crosse and F. B. Bain, suing for the benefit of themselves and all other 7% Cumulative Dividend Prior Preference stockholders of Virginia-Carolina Chemical Corporation, instituted this suit, naming as defendants Virginia-Carolina Chemical

---

*Due to circumstances beyond our control, it was necessary to re-assign the writing of this opinion. Hence the delay.

Corporation, a corporation, Harry Bronner, Spencer L. Carter, Jos. A. Dart, A. L. Ivey, George S. Kemp, Alfred Levinger, John M. Miller, Jr., J. Luther Moon, Leon M. Nelson, Thomas B. Scott, W. H. Slaughter, Jaquelin P. Taylor, George E. Warren, John T. Wilson, and Mason Starring. They asked "that the directors of said corporation be advised by this court whether they can vote for and pay a dividend on said 7% Prior Preference stock without assuming a personal liability for such action; that the directors of said corporation be required to declare a dividend out of the net profits of said corporation earned during the fiscal year ending June 30, 1934, not needed for the legitimate purposes of said corporation, and that a mandatory injunction issue against the defendants herein to compel them to pay such dividend; that said defendants be required to pay said dividends from time to time hereafter as the financial status of said corporation's business may warrant; that all proper orders may be taken and enquiries made; that a reasonable and proper fee be allowed counsel for instituting and conducting this suit and for representing any other 7% Prior Preference stockholders who may intervene and become parties to this cause; and that your complainants may have such other and further relief, both general and special, as may be adapted to the nature of the case, and as equity and good conscience may require."

Upon bill and answers, exhibits, affidavits, and testimony taken in open court, the chancellor presiding reached the conclusion that these plaintiffs were entitled to the relief prayed for. He was also of the opinion that the Honorable Hunsdon Cary, counsel for the plaintiffs, should be paid a fee of $6,000, either by the corporation or by a ratable assessment on dividends to be paid on Prior Preference stock outstanding in the hands of the public. This assessment the corporation was to make, retain and pay to counsel. He was also of opinion that these director defendants were not guilty of bad faith, fraudulent conduct, or arbitrary action in withholding these dividend payments, and so decreed. From that decree comes this appeal.

We have already had occasion to consider the conditions

under which this Prior Preference stock was issued. *Kemp* v. *Levinger*, 162 Va. 685, 174 S. E. 820, 826. It is not necessary to restate here what was stated there. In that case it appears that the corporation had bought in and held much of this Prior Preference stock. The status of this stock so purchased is thus defined:

"Such stock once issued and later acquired by the corporation becomes what is generally known as 'treasury stock.' It is then not an outstanding obligation of the corporation because the obligor has become the owner of the obligation. The corporation has certainly reduced its assets by whatever amount of property it gave in exchange for the stock. It has likewise increased the proportional interest of the other share holders in the remaining assets of the corporation. In some States the franchise tax on corporations is based upon the capital stock outstanding. The question has frequently arisen whether or not treasury stock, that is, stock which was actually issued but subsequently reacquired by the corporation, should be included in the term 'outstanding' *quoad* the corporation and the State. In such cases, unless the stock has been formally retired, for the purpose of taxation it is usually held to be outstanding."

There are 144,871 shares of this stock. The corporation has bought in 90,499 shares, which it held as uncancelled "treasury stock," leaving outstanding in the hands of the public 54,372 shares. The question as to payment of a 7% dividend on them for the fiscal year ending June 30, 1934, came before the Board of Directors at a meeting held on September 14th of that year. Mr. Kemp moved that it be paid. His motion was defeated, there being four votes for the resolution and nine against it.

It is claimed that the directors who voted against payment of this dividend were influenced by improper motives, by fear of that personal liability provided for in Code, section 3840, as amended by Acts 1932, chapter 122, page 132, and by Act of Congress known as the Securities Exchange Act of 1934, 15 U. S. C. A. §§ 77b-77e, 77j, 77k, 77m, 77o, 77s, 78a et seq. This they deny, and say that they acted upon advice of com-

petent counsel and upon their own individual judgment.

The net profits for the fiscal year ending on June 30, 1934, were $492,377.42. Debts as of that date amounted to $189,591.47.

The corporation now holds "treasury stock" having a face value of $9,049,900.00 and carried as an asset in said sum; though it was bought for less. The difference between this face value and the purchase price, plaintiffs contend, is profit realized which should be credited to surplus account. If we adopt this theory, the surplus at the end of said fiscal year was $1,458,277.05, including the net earnings for that year.

The defendants contend that there is no such profit. They point to the fact that the corporation began business with an initial surplus of $3,541,880.09, that dividends paid to these stockholders during the life of the corporation have exceeded its net earnings, and that this initial surplus has been reduced so that in no event does it now exceed the sum of $941,621.09 without provisions for bad debts and other contingencies. They further say that it is for the directors to decide if this profit, assuming for the sake of argument that there is a profit, should be used to reinstate a depleted surplus or to provide for future contingencies. In short they tell us that the affairs of a corporation should be managed by its directors and not by courts.

The joint stock company which buys in a share of its stock, sold at par for less than par, has reduced its liabilities and has made a profit if we assume that we are dealing with a completed transaction.

If a company with a capital stock of $10,000 has assets equal to its liabilities and goes out of business, it should repay to these stockholders this $10,000. They would receive that and nothing more. If, however, that company had purchased half of its stock at half its face value, it would pay to these outstanding stockholders the face value of their stock, or $5,000. It would still have on hand $2,500, which would be a surplus to be distributed among them.

Should the company continue in business, the situation is

not so simple. Where stock is purchased and cancelled, the transaction is completed, and the results are as certain as they would be were the corporation to buy in its $1,000 bond for $500.

The defendants tell us that that is not this case, that the stock in judgment has not been cancelled but is held as treasury stock, (*Kemp* v. *Levinger, supra*); that there has been merely a transfer of it to the corporation which may reissue and sell it at any time. Such a resale they say may be at a profit and may be at a loss, but that the stock itself so long as it remains uncancelled remains a company liability.

■ For reasons to be stated, the conflicting views of these litigants are not now before us. The court below has decreed that the difference between the purchase price of this Prior Preference stock and the par value thereof constituted an actual surplus out of which dividends might be paid. Unless there has been an appeal from that judgment by some one who has a right to appeal, it is the law of this case and stands.

There were fifteen of these directors, namely: Harry Bronner, Spencer L. Carter, Joseph A. Dart, A. L. Ivey, George S. Kemp, Alfred Levinger, John M. Miller, Jr., J. Luther Moon, Leon M. Nelson, Thomas B. Scott, W. H. Slaughter, Jacquelin P. Taylor, George E. Warren, John T. Wilson, and Mason Starring. Eleven of them, in their joint and several answer, took the position that the decree appealed from is erroneous. They are: Harry Bronner, Spencer L. Carter, A. L. Ivey, Alfred Levinger, John M. Miller, Jr., Thomas B. Scott, W. H. Slaughter, Mason Starring, Jacquelin P. Taylor, George E. Warren, and John T. Wilson.

In a joint and separate answer, George S. Kemp and J. Luther Moon say that the financial status of this corporation and the contractual rights of said stockholders justify the payment of the dividend in judgment.

The corporation, in its answer, said that no dividend should have been declared. Joseph A. Dart and W. H. Wilson have not answered at all.

Four directors of said eleven who answered, namely, Mason

B. Starring, George E. Warren, Harry Bronner and Alfred Levinger, have appealed.

So far as is shown by the record, all other defendants—the corporation and eleven of its directors have acquiesced in the judgment reached by the trial court.

■ The directors of a corporation must act in their corporate capacity, as a board in orderly procedure, and not as individuals; plainly one director cannot on his own initiative institute a suit on behalf of his corporation.

"Directors are only the agents of the corporation to conduct its business, and are not the corporation, and as directors merely they have not a shadow of interest in the corporate property, and therefore cannot, as individuals, sue for the protection of the corporate property." 7 R. C. L. sec. 427; *Stewart & Palmer* v. *Thornton, et als.*, 75 Va. 215.

Had a dividend been declared, they could not, as directors, have been heard to complain, unless possibly upon the theory that such distribution might impose upon them some personal liability.

This is a suit brought against a corporation and against certain individuals in their capacity as directors, the purpose of which was to compel them to pay a dividend. The trial court was of the opinion that such dividends should be paid. That decision the corporation itself has accepted, and it has been accepted by nine of those directors who have answered; four have appealed.

A reversal here would in effect amount to this: It would amount to saying that a dividend should not be declared, although the corporation itself and all of its directors except four are willing to pay it. It would be to vest control in four dissenting directors. By the same token control might be vested in one dissenter. The dissenting defendants have contended that a corporation should be allowed to control its own affairs.

■ In *Osborne* v. *Kammer*, 96 Va. 228, 31 S. E. 19, plaintiff prayed that by mandamus the City of Alexandria and the members of its city council, naming them, be directed to levy taxes for a certain purpose. The city did not answer but its

councilmen did. The court upon a hearing gave the relief prayed for. In that judgment seven councilmen acquiesced and from it five appealed. Their right to appeal was denied, the court being of opinion that these appellants were not aggrieved. If five out of twelve councilmen cannot appeal, then four out of fifteen directors cannot. If a minority of councilmen did not represent the city or the city council, then a minority of directors cannot speak for their corporation or for their board. They were not aggrieved.

The decree under review has relieved them from the possibility of personal liability.

What is a fair fee to be paid counsel who has instituted and prosecuted this litigation? The court has allowed him $6,000. Whatever allowance is made should, we have seen, be assessed against those stockholders who are benefited and not against the corporation, which merely acts as a collecting agent.

Should counsel fees be allowed at all? The trial court was of the opinion that it is a proper case for such an allowance and fixed that fee at $6,000.

In *McCormick* v. *Elsea*, 107 Va. 472, 475, 59 S. E. 411, 412, the court said:

"Except in rare instances, the power of a court to require one party to contribute to the fees of the counsel of another party, must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which enures to the common benefit of all; but the discretion vested in the court should never be exercised in a case where the interests of the party whose fund is sought to be charged are antagonistic to the party for whose benefit the suit is prosecuted."

It is contended that this question is settled by the cause of *Gordon's Ex'rs, et als.* v. *Richmond, F. & P. R. Co., et als.* That case was twice before this court. See 78 Va. 501 and 81 Va. 621. Though persuasive, it is not conclusive. The question at issue there was whether certain guaranteed stockholders were entitled to certain dividends at all. In the instant case the right of guaranteed stockholders to be ulti-

mately paid when there is anything to pay them with is not contested, and so literally speaking a fund is neither discovered nor created. The right, however, to charge a fee against those members of a class who were benefited but not represented was recognized, and this right was reaffirmed in *Holland* v. *Whitley*, 158 Va. 115, 163 S. E. 349. Here, present participation is contested. To deny that for an indefinite time may in the end amount to a total denial. Those who are to take are presently actively benefited.

Of course the corporation is not interested if this charge is to be made ratably against participating stockholders nor are the directors as such.

It is interesting to note that Mr. Kemp, the principal contesting stockholder, thought that a fee of ten cents a share is a proper charge, thereby admitting that some charge is proper. We reach without difficulty the conclusion that a fee should be charged against these stockholders as a class, who are benefited by the results of this suit and who are not represented by counsel and that those who are represented, in conceding that a fee should be charged, conceded that a proper fee should be charged.

The fixing of fees by a court of equity always gives trouble. We have no yard stick. It is easy to be generous at the expense of others, but we should not commit one error in an attempt to avoid another. We should not be generous but we should be just.

Mr. Kemp, Mr. Dart, Mr. H. C. Campbell, Mr. Robert E. Scott and Mr. James W. Gordon were of the opinion that ten cents a share was enough. Mr. Leon M. Nelson thought that even a less sum was sufficient. Messrs. Henry C. Riely, Murray M. McGuire and A. Sidney Buford thought that 5% was a fair charge, or in round numbers, that a fee of $15,000 should be allowed.

Upon careful consideration, we are of opinion that a fair fee is 2% of the amount to be distributed, to be deducted, as we have seen, by the corporation when dividends are paid. There are 54,372 shares of stock in the hands of the general public and on them the aggregate dividends for said fiscal

year amount to $380,604. This sum of 2% on $380,604 so retained is to be paid by the corporation to Honorable Hunsdon Cary, counsel of record.

In reaching this conclusion, we have taken into consideration the importance of the issues involved, the money at stake, and the vigor with which this litigation has been prosecuted and defended.

Modified as indicated, the decree of the trial court should be affirmed, and it is so ordered.

*Modified and affimed.*

*Upon Petition for Rehearing March 11, 1937.*

Present, All the Justices.

*Per Curiam:*

A rehearing is denied. The corporation itself, and certain gentlemen in their capacity as directors, were made defendants. The conclusions of the chancellor below were embodied in a decree which appears to have been satisfactory to the corporation itself, and to a majority of its defendant directors. From that decree, a minority of these directors appealed. We held that they had no right to appeal.

This court, of course, had jurisdiction to entertain an appeal, but here the appeal has failed, not because we had no substantive jurisdiction, but because that jurisdiction was not invoked by the right people.

It is now contended that since we have held that we are without jurisdiction, we are without power to disturb the allowance of counsel fees made by the chancellor below to Senator Cary.

He contended, as he had a right to contend, that this allowance was inadequate, and has set up that contention in a cross assignment of error. Plainly he had the right to do this, and he could not have been expected to present with this assignment a copy of a record already before the court. Such duplication would have been futile and useless. The procedure which he followed is that usually adopted. It is authorized by Rules of Court—Rule VIII. See *Wheeler* v. *Thomas*, 116 Va. 259, 81 S. E. 51.