## KAMAS SECURITIES CO. v. TAYLOR

No. 7398. Decided December 30, 1950. (226 P. 2d 111)

242

See 19 C. J. S., Corporations, sec. 817. Removal of corporate officers, see note 63 A. L. R. 776. See, also, 13 Am. Jur. 864 et seq.

*McKay, Burton, Nielsen & Richards,* Salt Lake City, for appellant.

*L. C. Montgomery,* Heber City, *Wm. D. Callister,* Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff corporation sued defendant Moses C. Taylor, its secretary for wrongful surrender to a defaulting debtor of 30 shares of bank stock allegedly pledged as security for

payment of promissory notes executed by Elliott C. Taylor, brother of defendant. After defendant testified on deposition that he had never received the stock as a pledge, but only in connection with an offer of settlement, the pleadings were amended to charge the defendant with having misled the plaintiff by false representations that the stock had been pledged, whereby the corporation suffered a loss by reason of the running of the statute of limitations with respect to action on the promissory notes. Defendant denied that the stock was ever pledged as security, denied that he had ever so represented, alleged that the suit against him had never been authorized by the board of directors, and also pleaded limitations. From an adverse judgment defendant appeals.

Defendant was cashier of the Kamas State Bank for more than 20 years. Upon the organization of plaintiff corporation he became its secretary. His brother, Elliott C. Taylor, executed 3 promissory notes to and in favor of the Kamas State Bank, one for $2000 dated January 2, 1925, and the others for $500 and $250 respectively, dated May 9, 1933. These notes were included in the assets of Kamas State Bank which were transferred to the plaintiff corporation about February 13, 1934. On January 2, 1935, Elliott C. Taylor executed a renewal note for $2000 made payable to plaintiff corporation. These notes were in the custody of the defendant as secretary of plaintiff corporation.

There was testimony to the effect that at the time these notes were transferred to plaintiff corporation, defendant represented that they were secured. It is undisputed that about 1936, when the renewal note for $2000 became due and payable by its terms, Elliott C. Taylor delivered to defendant Moses C. Taylor 30 shares of the capital stock of Kamas State Bank duly endorsed. For approximately 6 years thereafter he made various requests that such stock

be transferred to the plaintiff corporation in full settlement of his indebtedness to the corporation. Prior to 1941 constitutional and statutory provisions imposed double liability on owners of bank stock, Constitution, Article XII, Sec. 18, and Secs. 7—2—12 and 7—3—16, R. S. U. 1933. For some period of time some of the officers of plaintiff corporation were reluctant to accept the stock in view of such double liability of owners, although the corporation then held some stock in the bank. About 1937 the plaintiff corporation employed counsel to collect on various notes and accounts. When counsel discussed the possibilities of recovering judgment against Elliott C. Taylor, he informed defendant that he found no unexempt property in the name of Elliott, and according to the testimony of such counsel, defendant thereupon stated that the notes were secured. He also testified that in 1939 when he demanded payment, he was informed that Eliott was ill and he was asked by defendant not to press the matter, since the notes were secured.

It is clear that as to the $500 note and the $250 note executed on May 9, 1933, no due date being specified, they were demand notes under Sec. 61—1—8, R. S. U. 1933, U. C. A. 1943, inasmuch as interest was to be paid at the rate of 6 per cent per annum, with no specified date as to when interest was to be paid. The six year statute of limitations, 104—2—22, R. S. U. 1933, commenced to run immediately from the date of execution of those notes. See 34 Am. Jur., Limitation of Actions, § 147, p. 118-19. Thus, action thereon was barred by May 9, 1939. The renewal note of $2000 was payable on or before January 2, 1936, so that the statute of limitations would have barred action on that note by January 2, 1942.

Sometime in 1940, before action could have been barred on the renewal note, either the president or vice-president discussed with counsel some possible courses of action to be

taken. Counsel stated that since the corporation held the stock as a pledge, there could be a foreclosure and a deficiency judgment taken for any indebtedness in excess of the proceeds of sale of the pledged stock. He also told the officers that if they waited until the statute of limitations barred action on the note, the statute would not run with respect to the security while in the possession of the corporation as pledgee, but that no deficiency judgment could be taken. Counsel was instructed not to take legal action at that time.

According to the testimony of counsel, in 1941 he had a telephone conversation with defendant about these notes, and defendant said the stock was held as security and that he hoped something could be worked out. Both the president and vice-president testified that defendant assured them that the notes were secured, and defendant requested them to be lenient with his brother and not take action then inasmuch as the stock was held by the corporation and could be transferred into the name of the corporation at any time. In the minutes of the directors' meeting held on February 26, 1940, prepared by defendant, reference was made to acceptance of the 30 shares of stock in settlement of the Elliott C. Taylor notes. While defendant denied that he ever told counsel for plaintiff that plaintiff held 30 shares of bank stock as a pledge, in the minutes of the directors' meeting held October 13, 1941, (which minutes were prepared and signed by defendant as secretary), appears the following: "Settlement of the notes of Aaron C. Taylor and Elliott C. Taylor *for the stock of the Kamas State Bank, which is held as security on said notes* is referred to A. W. Warr, with instructions to secure a release of the notes from Attorney Wm. A. Callister and have the stock settlement accepted, provided satisfactory arrangements can be made with the attorney to withdraw the said notes and not have them listed for payment of the 25% of the amount collected as attorneys fees." (Italics added.)

The aforesaid directors' meeting was held prior to the date when the six year statute of limitations could have barred action on the renewal note for $2000. In a letter written by defendant on the letterhead of Kamas State Bank, addressed to the attorney for plaintiff, dated February 5, 1942, defendant stated: "We have 36 shares of stock in Elliott C. Taylor's name which is collateral to his note with the Kamas Securities Co." In the meantime, according to the testimony of Elliott C. Taylor, he sought to have the stock accepted in full settlement of his account. Counsel for plaintiff corporation had some discussion with defendant in 1943 in which the transfer of the stock into the name of plaintiff was requested. By letter dated May 25, 1943, addressed to the attorney for plaintiff, defendant stated over his signature as "Sec.-Treas.":

"Following up your telephone conversation I find attached to the notes of Elliott C. Taylor, 30 shares of stock in the Kamas State Bank, endorsed.

\*　　　\*　　　\*　　　\*　　　\*　　　\*

"I talked to Frank Knight after your telephone conversation suggesting that he give us authority to have this stock transferred in settlement of the notes and that it might also be a good idea to give Elliott a chance of making a compromise settlement on the note and that he might be in a position to discuss this with the Company. He will likely talk this over with Arthur Warr, if he comes up this way and he will likely see you about it.

"I had suggested that this transfer be made and the notes cleared up some time ago.

\*　　　\*　.　　\*　　　\*　　　\*　　　\*

"I will appreciate your advising me of your recommendations on the stock above referred to and what you have as a claim on the collection of this account if the stock is accepted as settlement of the notes."

By letter from counsel for plaintiff corporation addressed to defendant, dated June 16, 1943 defendant as secretary was requested to transfer such bank stock then standing in the name of Elliott C. Taylor into the name of plaintiff corporation. Counsel stated that his fee would be determined in conference with the president. Sometime later when counsel contacted defendant, the defendant said he desired to talk to Elliott about transferring the stock. For

several years thereafter said counsel was in military service, but in 1946 he inquired of defendant with respect to the settlement. Defendant then informed him for the first time that the stock had been surrendered to Elliott. When asked why, defendant said that the notes had been outlawed by the statute of limitations. This suit was commenced in October 1946, several months after counsel learned of the surrender of the notes. The action was brought in the name of the corporation, and the complaint was verified by A. W. Warr as president.

Defendant attacks the judgment under specifications of error which may be grouped as follows: (1) Failure of plaintiff to state a cause of action; (2) want of authority to maintain the action; (3) lack of competent evidence to sustain some of the findings and insufficient evidence of damage; (4) that action was barred by the statute of limitations; and (5) that judgment for costs is void.

We find no merit to the contention that plaintiff did not state a cause of action. The plaintiff alleged that the notes were originally transferred to the corporation and accepted by it on the representation that 30 shares of stock of Kamas State Bank were held as security, and that the defendant made various representations that the notes were secured, in order to induce delay and inaction until the statute of limitations had run against suit on the notes; that he had possession of the stock which the corporation had instructed him to transfer in settlement of the indebtedness, and that he failed and neglected to do so, to the damage of the corporation in the amount of the value of such ■ stock. There is a specific allegation that defendant was secretary of the corporation during the period in question. Thus, there is stated a cause of action against defendant as a corporate officer for breach of his fiduciary duty. The fact that recovery might have been predicated on the ground of deceit does not render the pleading de-

fective. Nor would evidence which might show that defendant was not a de jure officer affect the right of recovery.

The second contention is to the effect that there was no authority to institute nor to maintain the action in the name of the corporation for the reason there was no resolution of the board of directors authorizing such action. The appellant points out that the trial court found in substance that the president who verified the complaint, was suing as a stockholder on behalf of the stockholders. There was no intent to maintain a derivative suit. It is true that there was no resolution of the board of directors directing such suit to be filed, but an executive officer is not required to wait for formal resolution of the directors to perform his official duties to preserve the assets of the corporation or to prevent their dissipation.

A. W. Warr was president and a director at the time suit was filed. There was a controversy among the directors, and it is apparent that defendant sought to prevent the directors from taking legal action against him in 1946. A directors' meeting in which the question of defendant's liability was a subject of discussion, broke up without any formal action being taken by the board. However, A. W. Warr continued to be president after suit was filed, notwithstanding some efforts during his absence in 1948 to declare the office of president vacant. Article IX of the articles of incorporation provides that an officer may be removed by a 2/3 vote of the outstanding stock at any regular meeting or at any special meeting called for that purpose. The attempted removal of the president was at a directors' meeting, not at a stockholders' meeting, and admittedly no notice was given. Nor is there even a resolution of the directors which could be construed as countermanding the action of the president in filing suit in the name of the corporation. The action

was therefore instituted by and in the name of the corporation through its president, and it was maintained on behalf of the corporation, notwithstanding lack of formal direction from the board of directors.

In 2 Fletcher Cyc. Corp., § 618, the following rule is stated:

"According to the more modern authorities, the president of a corporation has power to institute suits in its behalf, * * *. In some jurisdictions this is held to be an inherent right in the president, an incident to the office * * *."

In *Green Bay Fish Co.* v. *Jorgensen,* 165 Wis. 548, 163 N. W. 142, 144, the court declared:

"There is no need that express authority to commence such an action should be given by the board of directors to a president who is clothed by the charter or by-laws of the corporation with the management of every department of the company. Such authority may well be implied in the president of a corporation, especially under the circumstances of this case where one who is a director and treasurer of the company must be sued, and that one other of the four directors had himself overdrawn his account and had resigned as such director, as Ketter did. It would be an idle formality to insist that the board of directors should be convened to do by formal resolution that which would be and ought to be so evidently within the power of the head of such a corporation. Thompson on Corp. § 1433; *Trustees of Smith Charities* v. *Connolly,* 157 Mass. 272, 31 N. E. 1058; 10 Cyc. 904. * * *"

Regardless of any findings to the effect that the suit was by a stockholder on behalf of the stockholders, this action was properly instituted by the corporation ■ at the instance of the president, and this action was maintained in the name of the corporation. The president in this case was not required to obtain the consent of the board of directors, and had he deferred action until such consent had been procured the corporation might have suffered an irreparable loss. The erroneous findings with respect thereto should be disregarded if a right result was reached.

The third point argued is that there was not sufficient evidence to support some of the findings, and particularly

no competent proof of damage.

The defendant served as secretary of plaintiff corporation. Whether a de jure or a de facto officer, he functioned as secretary. The documentary evidence shows that as such secretary he represented to the directors and to counsel that the notes were secured. The record clearly shows that the debtor wanted to have the bank stock transferred in full settlement of his obligations, and although defendant was urged to make the transfer, he hesitated and then neglected to do so. He ultimately surrendered that stock to his brother, who was known to be a defaulting debtor, without consulting the directors or any other officer of the corporation. His excuse was that action on the notes was barred by the statute of limitations. Notwithstanding his claim that the stock was presented to him only in connection with an offer of settlement, one of the excuses for not having it transferred appears to have been the representation made by him to counsel and to other officers to the effect that the stock was held as security and that plaintiff was sure of having it. Some of defendant's testimony is in direct conflict with the unequivocal declarations made by him in writing up the minutes of directors' meetings and in letters written by him wherein he expressly stated that the stock was being held as security.

Even assuming that defendant as secretary of plaintiff corporation or in any other capacity as an agent for plaintiff, had obtained mere custody of that stock for purposes of settlement of the indebtedness, that situation would not exonerate him from liability to plaintiff in this case; for defendant failed and neglected to apply the stock in settlement of the debt after instructions to do so, while the offer was still pending. He testified that the other officers were reluctant to accept the bank stock in settlement of the debt by reason of double liability of owners of bank stock. However, such objection to acceptance of the

stock no longer existed after amendment of the Constitution, Article XII, Sec. 18, in 1940, and the repeal of Sec. 7—3—16, R. S. U. 1933 by Laws of 1941, Chap. 11, effective May 13, 1941, whereby double liability of owners of bank stock terminated. There can be no doubt about the fact that defendant as secretary still had the stock in his custody when he wrote his letter dated May 25, 1943, in which he asserted that he had recommended the transfer of the stock. By letter of June 16, 1943, he was definitely instructed to make the transfer; but upon being interviewed sometime later he said he wanted to talk to Elliott. He made no pretense that the other officers had attempted to revoke acceptance, nor that Elliott had served notice of revocation of the offer, assuming that the stock had not actually been pledged.

Assuming that defendant merely held custody of endorsed stock in connection with an offer of settlement of a debt, there is no satisfactory evidence of any attempt to revoke any offer of settlement up to June 16, 1943, Elliott testified that he repeatedly urged acceptance of the offer of settlement; that he demanded the return of the stock in the spring of 1943; and that defendant returned the stock in June "about a month later." The minutes of the board of directors indicate an absolute acceptance prior to this time, to be effective when arrangements were made for settlement of counsel fees. The contention that acceptance was conditional and contingent, is untenable, for when defendant was instructed on June 16, 1943, to make the transfer, counsel dispensed with any contingency by stating that his fee would be fixed by confidence with the president. Defendant disregarded the instructions. Had he made the transfer of the stock to plaintiff upon receipt of the letter of June 16, 1943, the result would have been substantially the same whether the stock had been pledged and taken in satisfaction of foreclosure proceedings or

whether the stock had been accepted in connection with an offer of settlement. °

In view of the fact that the defendant represented repeatedly that the stock was held as a pledge, it makes no difference whether there was a pledge or ∎ mere custody of the stock in connection with an offer of settlement. If a pledge, the defendant breached his fiduciary duty by surrendering to the defaulting debtor the security to which the plaintiff was entitled. If the stock was actually held in custody solely by virtue of an offer of settlement, defendant misled the directors into allowing the statute of limitations to run in favor of the debtor, by the repeated representations that the stock was held as a pledge. Plaintiff was damaged to the same extent whether the stock was actually pledged or not. As cashier of the Kamas State Bank, defendant well understood the meaning of a pledge, so that he did not use that term inadvertently in his written and oral representations. Inasmuch as defendant was liable irrespective of the truth or falsity of his representations, it is immaterial as far as this appeal is concerned whether the court was in error in finding that the representations were false. The trial court could properly have found that those representations were true, or that defendant was estopped to deny the truth thereof under the circumstances.

The court awarded damages in the amount of the value of the stock, and found that the stock was worth $60 per share, which was the lowest figure used by ∎∎ any witness for plaintiff. The competency of the evidence of value is challenged by appellant. The mere fact that market value could not be shown by reason of want of any listing on the stock exchange and the fact that there was only an occasional transfer of this type of stock, could not preclude plaintiff from recovering a judgment for more than nominal damage. The trial court was entitled to make a finding of value based on intrinsic

worth of the stock.  While market value is a general criterion of value, it is not the sole criterion.

On deposition defendant testified that he surrendered the stock in 1944, whereas at the trial he said he returned the stock in 1943.  Plaintiff relied on the date stated in the deposition, and used the reports to the state bank commissioner to show intrinsic worth of the stock.  A witness for defendant testified that such reports showed the stock to be worth only $32.53 per share as of June 30, 1944.  However, on cross-examination the witness admitted that he accepted five shares of stock at par, $100 per share, in payment for services sometime in 1943.  There was sufficient competent evidence to warrant a finding that the stock had some bearing on control of the bank, and that plaintiff was already the owner of some Kamas State Bank stock, which would tend to enhance the value of this stock to plaintiff.

In arguing that action was barred by the statutes of limitations, two principal contentions are made: (1) That if the stock had been received as a pledge, when action was barred on the notes, the plaintiff had no right of action on the pledge; and (2) that if defendant were liable, action against him would have been barred by limitations prior to commencement of suit.

We consider the contentions in the order stated.  A pledgee has possession, and the purpose of the pledge is to enable the creditor to retain possession until he is paid.  In Restatement of the Law of Security, § 47, the rule is stated as follows:

"A pledge is not terminated by the running of the statute of limitations against the claim secured by the pledge, nor by the discharge of the claim in bankruptcy."

In Comment *a* in explanation of such rule, it is stated:

"The effect of a statute of limitations is to bar the remedy but not to discharge the obligation.  Certain statutes, which in terms seem to extin-

guish the debt, have been interpreted as statutes of limitations. Even when interpreted as extinguishing the debt, the effect is not to terminate a scurity interst unless it is specifically provided that security interests are to end with the extinguishment of the debt. One rationalization of this result as applied to pledges is that although the original debt is extinguished, the pledgee retains against the pledgor a claim against the pledgor of the sort he would have if the parties had agreed at the outset that the pledgor assumed no personal obligation."

See also *Mitchell* v. *Automobile Owners Indemnity Underwriters,* 19 Cal. 2d 1, 118 P. 2d 815, 137 A. L. R. 928 et seq., 103 A. L. R. 430, 436 and 41 Am. Jur., Pledge and Collateral Security, p. 639-640.

It is further contended that action against defendant is for fraud, and that the three year period of limitations provided by 104—2—24 (3) had run between the date of discovery by some of the directors in the summer of 1943 that defendant had surrendered the stock, and the date when suit was filed. It is true that the allegations of the amended complaint charge that defendant employed deceit, but viewing the charge in its entirety it is clearly one of breach of a fiduciary duty which would mean that the four year statute of limitations would be applicable, 104—2—30. The contention that action was barred by limitations was therefore properly overruled.

Nor is the plea of laches valid in this case, for defendant attempted to use his office to prevent commencement of this suit. There was an effort on the part of defendant to gain control of the board of directors, and one of the directors admitted that he was put on the board to object to the filing of a suit against defendant.

Finally, appellant attacks that portion of the judgment below whereby costs were awarded to plaintiff. Judgment was entered prior to adoption of the new Rules of Civil Procedure. Some days prior to entry

of judgment, a cost bill was served and filed, which was clearly premature. When the judgment was prepared it included an allowance of costs in the sum of $204. No cost bill was filed after entry of judgment.

On authority of *Nelson* v. *Arrowhead Freight Lines, Ltd.*, 99 Utah 129, 104 P. 2d 225, and cases therein cited, appellant contends that it was error for the trial court to include costs in the judgment and consequently that this court should strike therefrom such award of costs. However, no motion to strike the cost bill was interposed below. Had such motion been duly made, opportunity might have been accorded plaintiff to re-serve and re-file its cost bill. Under such circumstances this court will not review a matter raised for the first time on appeal in this court. See *Malstrom* v. *Lund*, 55 Utah 353, 185 P. 1109, and *Smith* v. *Nelson*, 23 Utah 512, 65 P. 485. Cf. *Smith* v. *Alford*, 31 Utah 346, 88 P. 16.

The judgment of the district court is affirmed. Costs to respondent.

PRATT, C. J., and WADE, WOLFE, and LATIMER, JJ., concur.