LLOYDONA PETERS ENTERPRISES, INC., Plaintiff and Appellant,

v.

Dale M. DORIUS and DeLoris P. Dorius, Defendants and Respondents.

No. 18059.

Supreme Court of Utah.

Feb. 10, 1983.

Donn E. Cassity, Doris M. Harker, Daniel A. Barker, Salt Lake City, for plaintiff and appellant.

Walter G. Mann, Brigham City, for defendants and respondents.

HALL, Chief Justice:

Plaintiff Lloydona Peters Enterprises, Inc. (LPE), appeals the trial court's dismissal of its action for specific performance of an alleged contract to convey to it an interest in real property owned by defendants. At issue on appeal is whether Jean P. Hull, president of LPE, held authority to initiate this action on its behalf.

LPE is owned by four sisters, one of whom is defendant DeLoris P. Dorius. The corporation's assets consist of real property inherited from their mother, Lloydona Peters. Each sister holds an equal share in the stock of the corporation and each serves as a director and officer.

In December, 1971, defendants DeLoris P. Dorius and her husband Dale purchased an office building for which LPE agreed to pay a portion of the purchase price. At that time, the seller of the building placed in escrow a warranty deed showing defendants as title holders of the building. According to Hull, the escrowed documents also included an agreement on the part of defendants to convey to LPE an undivided one-half interest in the property upon final payment. Thereafter, defendants and LPE each made regular payments on the property, contributing approximately equal amounts toward the purchase price.

In 1978, in anticipation of completion of payment on the office building property, LPE and defendants began to discuss the possibility of sale of LPE's interest in the property to defendants. At their annual meeting on October 17, 1978, LPE's directors resolved to obtain two appraisals of the property and to then "meet with Dale and decide on a price." According to the minutes of that meeting, the directors intended to "contact Joy [P. McKell, vice president and director of LPE] and confer with her before a final decision is made."

Following appraisal of the property, defendants tendered to Gay P. Driggs, treasurer and director of LPE, a check in the amount of $14,000, allegedly representing the value of LPE's interest in the property according to the higher of the two appraisals. The minutes of a January 30, 1979 directors' meeting show that all four of the directors recognized this appraisal as valid. However, two of the four directors, Hull and McKell, remained undetermined as to whether to sell LPE's interest at the tendered price. In contravention of the expressed wishes of these two directors, Driggs deposited the check in LPE's bank account. Thereafter, defendants recognized no interest in the office building property on the part of LPE and discontinued rental payments which it had previously been forwarding to the corporation.

Approximately two and one-half years after payment of the $14,000, without authorization from LPE's board of directors,

Hull withdrew from the corporation account $15,838 representing the original $14,000 plus two years' interest. After using $2,000 of this money to retain legal counsel, Hull deposited $13,838 with the district court and filed a complaint seeking a warranty deed to an undivided one-half interest in the office building along with general and punitive damages. The complaint included the following allegation:

That this Complaint is verified by Jean P. Hull, President of Lloydona Enterprises, Inc., and said action is brought on behalf of the said corporation to preserve corporate assets and interests.

Defendants countered with a motion to dismiss, claiming that Hull had no authority to initiate litigation on behalf of LPE.

The trial court granted defendants' motion, stating:

I find that the control and management of the plaintiff corporation is [sic] in the directors, and they alone may authorize the institution of litigation. . . . [T]he president thereof does not have the implied power or the inherent power to institute this litigation in the name of the plaintiff corporation.

U.C.A., 1953, § 16–10–45 provides in part:

All officers and agents of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided in the bylaws, or as may be determined by resolution of the board of directors not inconsistent with the bylaws.

In accordance with the above rule, this Court has consistently refused to uphold the power of a corporate president to act in behalf of his corporation without authorization from its board of directors.[1] In *Lochwitz v. Pine Trees Mining & Milling Co.,* this Court quoted the following statement:

The board of directors to whom the authority to bind the corporation is committed is not the individual directors scattered here and there, . . . but it is the board sitting and consulting together in a body. Individual directors, or any number of them less than a quorum, have no authority as directors to bind the corporation.[2]

Hull does not deny this general rule, but claims authority to file the present suit under an exception to the rule, citing the case of *Kamas Securities Co. v. Taylor.*[3] In that case, the president of a corporation initiated litigation to recover the value of loan collateral improperly returned by the corporation's secretary to the debtor who had pledged it. The Court stated:

[I]t is true that there was no resolution of the board of directors directing such suit to be filed, but an executive officer is not required to wait for formal resolution of the directors to perform his official duties *to preserve the assets of the corporation or to prevent their dissipation.* [Emphasis added.][4]

In affirming the president's power to initiate litigation under the above circumstances, the Court pointed out:

[H]ad he deferred action until such consent had been procured the corporation might have suffered an irreparable loss.[5]

Unlike the plaintiff in the *Kamas Securities* case, LPE faces no danger of losing a significant asset. LPE received the sum of $14,000 tendered by defendants in payment for its share in the property. The tender was made in accordance with an appraisal which all four of the directors accepted as valid. Two of the directors expressly approved the sale at the January 20, 1979 directors' meeting. The other two, while noting their objection to the transaction, made no effort to return the $14,000 pay-

---

1. *Foster v. Blake Heights Corp.,* Utah, 530 P.2d 815 (1974); *Copper King Mining Co. v. Hanson,* 52 Utah 605, 176 P. 623 (1918); *Anderson v. Grantsville North Willow Irrigation Co.,* 51 Utah 137, 169 P. 168 (1917).

2. 37 Utah 349, 355, 108 P. 1128, 1130 (1910).

3. 119 Utah 241, 226 P.2d 111 (1950).

4. *Id.* at 249, 226 P.2d at 115.

5. *Id.* at 250, 226 P.2d at 115, 116.

ment or to legally contest the sale until nearly two and one-half years later. Thus, LPE has already on hand the sum apparently equal to the value of its interest in the property which Hull claims to be protecting in initiating this suit. Unlike the plaintiff in the *Kamas Securities* case, LPE faces no "irreparable loss" in the event of failure to initiate legal action. The facts of the present case therefore fail to justify any departure from the general rule prohibiting unauthorized acts by a corporate president.[6]

We hold that the trial court properly dismissed this action on the basis of Hull's lack of authority to initiate suit on behalf of LPE. Affirmed. Costs to defendants.

OAKS and HOWE, JJ., concur.

DURHAM, Justice (dissenting):

The majority opinion, while acknowledging that a corporate president may act for the corporation in the absence of authorization from the board of directors in order to preserve or protect corporate assets, holds that the corporation here is in "no danger of losing a significant asset." I disagree.

On a motion to dismiss, the trial court is required to accept the facts alleged in the complaint as true for purposes of the motion. In this case the verified complaint alleges that the respondents have failed and refused to execute and transfer title to the corporation for its undivided one-half interest in the real property, and have persisted in claiming that a "sale" from the corporation occurred by virtue of the unauthorized deposit of $14,000 into the corporation's bank account.[1] The complaint further alleges, in paragraph 11, as follows:

> That the reasonable rental value of the premises is $450.00 per month, and the Defendants have failed to remit to the Plaintiff for its one-half undivided rental interest in the above described property from November 1978, the time of the payment in full of the above referenced Real Estate Contract, at which time Plaintiff should have been conveyed an undivided one-half interest in the title to the property. Therefore, Plaintiff has been damaged in loss of rents in the amount of $7,200.00, plus accrued interest. Plaintiff will suffer additional damages of $225.00 per month for the time Defendant continues to withhold rents from Plaintiff.

The majority opinion appears to hold that a corporation may be forced to sell its interest in real property by virtue of the unauthorized deposit of a sum of money in an amount never agreed to by the corporation in one of its accounts. The deadlock on the LPE Board of Directors prevents any resolution authorizing a sale just as absolutely as it prevents any resolution authorizing this litigation. The fact that all the directors accepted an appraisal as "valid" has no bearing on the issue of whether the corporation will accept the appraisal price in a proposed purchase. In the absence of a valid sale, LPE is being deprived (perhaps permanently) both of title to its undivided one-half interest in property, which may be appreciating in value, and of its share of the past and future rents. There should be

---

**6.** See *Ney v. Eastern Iowa Telephone Co.,* 162 Iowa 525, 144 N.W. 383 (1913); *Community Chest of Caddo & Bosier Parishes v. Union Mission Association,* La.App., 30 So.2d 131 (1947); *Kelly v. Citizens Finance Co. of Lowell,* 306 Mass. 531, 28 N.E.2d 1005 (1940); *British Brokers, Limited v. Wolford,* 29 Misc.2d 997, 219 N.Y.S.2d 827 (1961); *Valley International Properties, Inc. v. Brownsville Savings & Loan Association,* Tex.Civ.App., 581 S.W.2d 222 (1979); *Starring v. Kemp,* 167 Va. 429, 188 S.E. 174 (1936); *Smith v. Cornelius,* 41 W.Va. 59, 23 S.E. 599 (1895).

**1.** The majority opinion apparently attaches some significance to the fact that the $14,000

has never been returned. However, the record reflects that directions from the corporation president to its treasurer to return the funds have been ignored, the treasurer being aligned with the respondents in this dispute. Since the deposit of the funds, notice to all parties has been given that the corporation did not accept those funds as payment in connection with the proposed sale which is the subject of dispute between the parties. The entire sum, plus interest, was tendered to the defendants in the complaint and the complaint recites that it was deposited with the court upon the commencement of the action.

no question that such title and rents constitute "significant assets" which bring this case within the holding of *Kamas Securities Co. v. Taylor,* 119 Utah 241, 226 P.2d 111 (1950). I would reverse.

STEWART, J., concurs in the dissenting opinion of DURHAM, J.