451 P.2d 375

**LAKE CREEK IRRIGATION COMPANY,**
a corporation, Plaintiff and Appellant,

v.

**Don CLYDE and Kathryn Clyde, his wife,
et al., Defendants and Respondents.**

No. 11148.

Supreme Court of Utah.

March 6, 1969.

Warwick C. Lamoreaux, of Lamoreaux & Gibson, Salt Lake City, Utah, for plaintiff appellant.

J. Robert Bullock, of Aldrich, Bullock & Nelson, Provo, for defendants respondents.

ELLETT, Justice.

The plaintiff commenced these proceedings, asking the court to quiet title to certain lands and waters and to vacate and set aside a deed and contract executed by the president of the plaintiff corporation. From an adverse ruling by the trial court the plaintiff appealed to this court. The case was tried to the court without a jury, and consequently the evidence must be re-

viewed in the light most favorable to sustain the findings of the court and the judgment based thereon. DeVas v. Noble, 13 Utah 2d 133, 369 P.2d 290 (1962).

There were claims and counterclaims between the parties, but finally on March 31, 1959, their differences were settled by a written agreement signed by Don Clyde, James Clyde, and Robert Clyde, and by Lake Creek Irrigation Company by its president, Clyde Ritchie, and secretary, Louris V. Mahoney. By this agreement the Clydes agreed to accept the promises of the Lake Creek Irrigation Company therein contained in full settlement for their claim for the loss of some hundred lambs which they asserted was caused by the negligent construction of a cement ditch and fences along the side thereof, together with a bridge across the channel. The Clydes further agreed to grant an easement to the plaintiff to maintain and operate a concrete ditch across their land.

The plaintiff agreed to take steps to avoid erosion of the channel of its canal across the defendants' land by certain specified methods; to make certain changes in its roadway so as to prevent intermingling of sheep; to make improvements to its fences on both sides of the ditch; to keep sufficient water in the Mills Ditch to enable the defendants to water their livestock; and to permit the Clydes to transfer water from one reservoir to another during high water period in the spring and also during autumn, after September 5, of each year. (There were other matters agreed upon which are not material to this opinion.)

The attorney who drew the agreement was employed by the Clydes but was well known to the officers and directors of the plaintiff corporation; in fact, he had been counsel for that corporation upon prior occasions. He testified that at the time of the discussion leading up to the agreement, there was present, in addition to those signing the documents, one William J. Bond, who was a director of the plaintiff corporation. The defendant Don Clyde also testified that Mr. Bond was present. However, Mr. Bond, testifying as a witness for the plaintiff, denied that he was present at the time. (It should be noted that he told the court that he was 79 years of age.)

The plaintiff claims that the contract is void or at least voidable because the president and secretary had no authority to enter into such an agreement. Each director professed ignorance of the terms of the agreement, and even the president and secretary, who signed it, claimed they did so without reading it.[1]

Each director knew that there was a claim by the Clydes for loss of sheep, and

---

1. One can hardly criticize the trial judge for believing as he did.

**224**

most of them did work in repairing the fences, channel, etc. The community where the parties all live is chiefly a rural area, and knowledge of common interest travels fast in such communities. The directors each claim that they knew nothing of a promise to let water flow in the Mills Ditch for the benefit of the stock of the Clydes, and that they never consented to the promises purportedly made in the contract.

The minutes of the corporation do not show that such an agreement was ever discussed in open meeting until this lawsuit was contemplated. However, the records of the corporation are in the custody of its officers, and what they knew about the agreement with the Clydes is also something peculiarly within their knowledge. Their evidence in respect to these matters is in their self-interest. It is, therefore, something which the trial court could discount or disbelieve if he so desired.

■ On the other hand, it seems that there is sufficient other evidence as to the conduct of the directors to warrant the trial court in believing that they knew all about the difficulties that were existing between the parties, and this is all the more likely since Robert Clyde appeared at a directors' meeting and discussed these problems. There, too, was the evidence as to what the directors did, and from this the trial court could reasonably believe as he did that the directors in fact knew about, accepted the benefits of, and ratified the agreement with the Clydes.

■ The question of whether the board of directors should be deemed to have ratified the agreement on behalf of the corporation depends on questions of fact and inference to be drawn therefrom. The trial judge, exercising his prerogative in that regard, found as follows:

5. That on or about March 31, 1959, Clyde Ritchie and Louris V. Mahoney, who were the president and secretary, respectively, of plaintiff corporation, and had been so for many years, executed and delivered to defendants a written agreement identified as plaintiff's Exhibit No. 7, and a quitclaim deed identified as plaintiff's Exhibit No. 8.

6. That no formal resolution of the board of directors of plaintiff corporation authorizing the president and secretary to execute and deliver such instruments was entered upon the minutes of the corporation's board of directors.

7. That in the spring of 1959, after the execution and delivery of such instruments, at least three of the five members of the board of directors personally participated in performance under the agreement and had knowledge that an agreement of settlement of many matters of controversy between the plaintiff and the defendants had been reached; that said directors apparently failed to

inform themselves as to the particulars of the settlement agreement, and did not use due diligence in that regard.

8. That plaintiff corporation paid defendants' attorney for preparing the settlement agreement and quitclaim deed pursuant to the agreement which he prepared.

9. That prior to March 31, 1959, all of the directors knew defendants asserted a claim against plaintiff corporation for the loss of certain lambs, and knew that a settlement of said claim had been made, but apparently failed to inform themselves as to the particulars thereof; that said directors did not use reasonable diligence in that regard.

10. That plaintiff corporation accepted the benefits of the agreement identified as plaintiff's Exhibit No. 7, for more than six years, and did not repudiate the same until shortly before this lawsuit was commenced.

A case similar to the instant one was before this court in 1960 in White v. Western Empire Life Insurance Company, 11 Utah 2d 227, 357 P.2d 483. There the president of the defendant company sold stock to the plaintiff and as a part of the contract agreed that the company would repurchase the stock after a certain date at an increased price. The defense was that the president was not authorized to enter into such a contract. The plaintiff had judgment in the court below, and this court affirmed.

In his concurring opinion the Chief Justice stated:

* * * First, it was the company which chose Mr. Timpson as its president and reposed confidence in his integrity. Second, the company took Mr. White's money and accepted the benefits of the bargain by using it until the time for it to perform arrived. Under such circumstances it seems more fair and equitable that the company be held responsible for the acts of its agent and bear the loss involved than to visit loss upon a third party who appears to have dealt with the company's president in good faith.

Furthermore, if the company could reject such an obligation, as was attempted here, its president could enter into such a contract; the company could enjoy its benefits, then when it came time to live up to its bargain, deny the obligation on the ground that the president had been given on such authority.

That language seems apropos here.

The original complaint was to quiet title of plaintiff in and to fishing rights in Deer Valley Reservoir and in Witt Lake. When its proof was in, the plaintiff moved to dismiss without prejudice all reference to its claim for rights in Deer Valley Reservoir and to amend its claim from fishing rights in Witt Lake to a quiet title action to the land around and about that lake. The

defendants objected to a dismissal unless it be with prejudice, claiming that they had gone to a great expense in preparing for trial on the issues as framed.

Rule 41(a) (2) U.R.C.P. provides that in a case like this "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."

■ The plaintiff refused to consent to a dismissal with prejudice of its claim for rights in Deer Valley Reservoir, and the court granted plaintiff's motion to dismiss without prejudice, conditioned upon its paying to the defendants the sum of $250 as attorney's fees. The plaintiff was under no compulsion to amend. It could have relied upon its proof and lost the case insofar as Deer Valley Reservoir was concerned. However, it preferred to dismiss without prejudice. We cannot see any abuse of discretion on the part of the trial judge in assessing attorney's fee as a condition to the granting of the motion as made by the plaintiff.

The judgment of the trial court is affirmed. However, in view of the allowance referred to above, we hold that each party here should bear its own costs.

CROCKETT, C. J., CALLISTER, J., concur.

TUCKETT, Justice (dissenting):

I dissent. I am unable to agree with that portion of the main opinion which affirms the ruling of the lower court to the effect that the quitclaim deed and contract which were signed by the president and secretary of the corporation were ratified by the board of directors of the plaintiff. It seems to me that the record is quite clear that the members of the board of directors of the plaintiff corporation had no knowledge whatsoever of the existence of the deed and contract or that the instruments had been executed and it cannot be said that the board ratified purported corporate acts of which they were unaware. For a period of approximately ten years prior to execution of the conveyance and contract here in question negotiations and conversations were had between officers and directors of the plaintiff corporation and the defendants pertaining to the operation and maintenance of the plaintiff's irrigation system and storage facilities which were adjacent to and traversed the defendants' grazing land. The record is silent as to any statement or negotiations pertaining to the conveyance to the defendants of any rights to the use of water or to fishing rights.

It is quite clear that the contract which was prepared by the defendants did in fact grant to the defendants the right to the use of certain waters under the control of the

plaintiff. Paragraph 5 of the contract provides:

> Party of the First Part [plaintiff] agrees to permit the Parties of the Second Part [defendants], their heirs, successors and assigns, to draw sufficient water from the Deer Valley Reservoir to reach the Mills Reservoir and to conduct the same by ditch to the Mills Reservoir during the high water period in the spring and in the autumn from September 5th on for the rest of the autumn of each year.

The powers of a corporation under the laws of this State can only be exercised by its board of directors. While it is true as stated in the main opinion that an act of an officer of a corporation might be ratified by subsequent action or acts of the board of directors, still I am unable to agree that a director might by his acts ratify an act of an officer of the corporation without having some knowledge of that act. The acts of the directors referred to in the main opinion might well be construed as performance or part performance of the oral promises made during the negotiations by the parties as above mentioned. It is interesting to note that a prior decision [1] of this court dealing with the subject of ratification of an act of a corporate officer approved the following statement:

> Thus, if the corporation can only authorize the particular act or contract by a power under seal, or by formal vote, ratification of such an act or contract must be under seal or by a formal vote, as the case may be.

Defendants in this case did not at the outset rely upon a ratification of acts of the president and secretary. The defendants, acting through their attorney, rather, requested the president of the plaintiff corporation to obtain a resolution of the board of directors authorizing the execution of the instruments above mentioned. It is also noted that the defendants did not fully perform their obligations under the contract but rather tendered performance after this action had been instituted.

It seems to me that the main opinion fails to adequately protect the shareholder of a corporation such as this and in fact opens the door to a dissipation of corporate assets in a manner contrary to the statutes of this State. I would reverse insofar as the trial court's conclusion that the contract and conveyance had been ratified.

HENRIOD, J., concurs in the dissenting opinion of TUCKETT, J.

1. Lochwitz v. Pine Tree Mining & Milling Co., 37 Utah 349, 357, 108 P. 1128. See also: Jackson v. Bonneville Irr. Dist., 66 Utah 404, 243 P. 107; Anderson v. Grantsville North Willow Irr. Co., 51 Utah 137, 169 P. 168; Aggeller & Musser Seed Co. v. Blood, 73 Utah 120, 272 P. 933; Copper King Mining Co. v. Hansen, 52 Utah 605, 176 P. 623.