Lynn G. FOSTER, Plaintiff and Appellant,

v.

**BLAKE HEIGHTS CORPORATION,**
Defendant and Respondent.

No. 13630.

Supreme Court of Utah.

Dec. 27, 1974.

**816**

William G. Gibbs, Clyde, Mecham & Pratt, Salt Lake City, for plaintiff and appellant.

E. J. Skeen, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiff Lynn G. Foster, as the named purchaser, sues to compel the Blake Heights Corporation, named as seller, for specific performance of an Earnest Money Agreement on about 45 acres of unimproved land in the south part of Salt Lake County. Upon a trial to the court it remained unpersuaded of plaintiff's contention that the parties had entered into a valid contract and made findings and entered judgment accordingly.

Plaintiff appeals contending that the evidence compels findings and judgment in his favor based upon two interrelated propositions: first, that Laurence Blake, who signed as Secretary-Treasurer of Blake Heights, had ostensible authority to bind the Corporation; and second, that under the circumstances the Corporation is estopped to deny its liability under the contract.

▪ Notwithstanding the fact that in an equity case such as this it is our prerogative to review the evidence,[1] we ordinarily repose some confidence in the verity of the actions of the trial court; and assume that he believed those aspects of the evidence which are in accord with his findings and judgment.[2]

Richard Grant, a real estate broker who had had previous dealings with Mr. Foster, reported to the latter that the Blake Heights Corporation owned the land in question and would sell it for $2,400 per acre. It is without dispute that Grant had no listing on the property from Blake Heights and that there would be no such relationship until a valid Earnest Money Agreement was executed. On July 17, 1971, Grant prepared such an agreement as an offer, which Mr. Foster signed, and then took it to Laurence Blake, Secretary-Treasurer of Blake Heights. The evidence is that Laurence Blake then stated to Grant that the offer would have to be approved by "other members of the Corporation."

Six days later Grant and Laurence Blake met again and the latter wrote on the Earnest Money Receipt substantial amendments to the terms of the offer, which is properly regarded as a counter-offer. His

1. Art. VIII, Sec. 9, Utah Const.

2. See Stanley v. Stanley, 97 Utah 520, 94 P. 2d 465; Nokes v. Cont. Mining & Milling Co., 6 Utah 2d 177, 308 P.2d 954; Hardy v. Hendrickson, 27 Utah 2d 251, 495 P.2d 28.

testimony is that he told Mr. Grant: "I will sign it for Blake Heights Corporation, and I will leave a space open and wide enough for Ralph [his brother, the President] to sign and you can go find him." It is significant that there was a space of about one inch left under the name Blake Heights Corporation, which plainly appears to be a blank for someone else to sign; then thereunder is the signature of Laurence Blake, Secretary-Treasurer. Grant then took the document to Foster, who signed his name under the words "counter offer accepted" on the right side of the page. That same day, Grant returned it to Laurence Blake. At the bottom of the page, on the left side he wrote the words Blake Heights Corporation, and under that, Laurence Blake, Sec. and Treasurer. He said that this was to acknowledge receipt of the document.

The following week Grant met with Ralph Blake, and DeLaun Blake, President and Vice President of the Corporation, and asked them to complete the contract. Their testimony is that they refused until some further matters relating to top soil removal, right of way, easements, and management of surface waters were agreed upon and included; and that Mr. Grant assured them that these matters could be worked out. The details concerning their subsequent attempts, over several months until the following May, 1972, to work out a final contract are unnecessary to set forth here. Two facts are significant: that the objective was not accomplished; and this lawsuit was filed to enforce the Earnest Money Agreement.

The position essayed by plaintiff Foster is that he was entitled to rely upon the Earnest Money Receipt according to its terms and as executed for the Blake Heights Corporation by Laurence Blake, its Secretary-Treasurer; and that any representations concerning limitation on Laurence Blake's authority were unknown to plaintiff and therefore were not binding on him and could not adversely affect his rights.

■ An initial difficulty with the plaintiff's position is that even from the physical appearance of the Earnest Money Receipt it is not clear and unambiguous that Laurence Blake, who signed as Secretary-Treasurer, purported to act for the Corporation. The best view that could be taken for the plaintiff is that it is ambiguous in that regard. This permits the court to consider extraneous evidence.[3]

■ Several observations are to be made regarding plaintiff's argument. The first is that even though it be true that Mr. Grant was eventually going to look to the seller, Blake Heights, for his commission, he was not necessarily acting solely for that Corporation in his talks with Mr. Foster. It is not always true that a broker who is negotiating a transaction must be exclusively the agent of one or the other. He may well be a "go-between" acting for both. And where he does so, with the knowledge and consent of both, each is chargeable with notice of facts the broker acquired in the process of the negotiations.[4] The fact is that it appears to have been at Mr. Foster's request that Grant had initiated the transaction. Foster himself testified, "We had discussed my interest in acquiring real estate and I had left the matter with him [Grant] that if you see something that looks interesting by all means let me know." What the plaintiff's argument amounts to is that he claims the benefits of the favorable aspects of Mr. Grant's conduct in working out the sale, but wants to disclaim anything that is unfavorable to him. But that does not meet the requirements of justice, nor of the law. If Grant was acting for him to get the benefits of the transaction, he is bound by both the favorable and the unfavorable aspects of Grant's conduct in that regard.

■ With the foregoing in mind we refocus attention upon significant aspects

3. Cont. Bank & Tr. Co. v. Bybee, 6 Utah 2d 98, 306 P.2d 773.

4. See Annot., 4 A.L.R.3d 224; 12 C.J.S. Brokers § 137, p. 347.

of the evidence in the light the trial judge chose to view it. He appears to have believed the testimony of Laurence Blake that he told Grant that he would sign the counter-offer as Secretary-Treasurer, but that the contract would have to have Ralph's approval and signature. Supportive of that testimony is the fact noted above that there was a substantial space left for the signature of the President of the Corporation, presumably after appropriate consideration and action thereon by its Board of Directors. No officer or agent of a corporation has any authority to make a contract to sell its real estate without such action. This is particularly true of the secretary-treasurer who, it is commonly known, is not ordinarily a principal officer who binds a corporation.[5] From a consideration of the facts shown in combination it can be said with confidence that there is a reasonable basis in the evidence to justify the trial court's refusal to be persuaded that the Blake Heights Corporation had agreed to the contract as set forth in the Earnest Money Receipt.

Plaintiff's argument on estoppel and the defendant's rejoinder thereto largely parallel what has been said on the issue of ostensible authority. He avers that having reposed confidence in the ostensible authority of Laurence Blake as above discussed, he considered himself to be bound on the contract for nearly a year; that meanwhile the property had greatly enhanced in value, and that he will suffer substantial loss unless the contract is enforced; and that the Corporation having knowingly permitted him to do so, should be estopped to deny the authority of its agent and its responsibility under the contract.

We agree that estoppel can be invoked to prevent unfair results in disputes between corporations and third parties under circumstances where a company has in-

vested its officer or agent with actual or ostensible authority with knowledge that the third party will or does in fact rely thereon, and the corporation takes the benefit of the conduct.[6] However, upon reference to the facts as found by the trial court and as recited herein, it will be seen that they are different from the cases relied upon by the plaintiff; and that there is justification for the trial court's refusal to find that the plaintiff reasonably assumed and relied upon ostensible authority and a binding contract in order to make out an estoppel.

Upon the foundation of the basic rule of review in equity cases: that we do not overturn the trial court's findings unless it appears that the evidence clearly preponderates against them, nor interfere with his actions unless it clearly appears that he was in error,[7] the judgment is affirmed. Costs to defendant (respondent).

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

5. See 19 Am.Jur.2d, Corporations, Sec. 1227, p. 640.

6. See Grover v. Garn, 23 Utah 2d 441, 464 P.2d 598; White v. Empire Life Insurance Co., 11 Utah 2d 227, 357 P.2d 483; Lake Creek Irrigation Co. v. Clyde, 22 Utah 2d 222, 451 P.2d 375.

7. See cases in footnote 2 above.