Grant **ERCANBRACK**, Plaintiff
and Appellant,

v.

**CRANDALL–WALKER MOTOR COMPANY,
INC.**, Defendant and Respondent.

No. 14298.

Supreme Court of Utah.

May 26, 1976.

Richard L. Maxfield, Maxfield, Gammon, Ellis & Dalebout, Provo, for plaintiff and appellant.

Walter R. Ellett, Murray, for defendant and respondent. .

TAYLOR, District Judge:

Plaintiff appeals from an order of the trial court granting defendant's motion to dismiss the complaint and dismissing plaintiff's complaint.

Plaintiff initially filed a complaint for specific performance of an alleged contract for the purchase of a Ford pickup truck. After it became apparent that specific performance was impossible because the defendant had sold the truck, the plaintiff filed an amended complaint wherein he sought to recover damages for the difference between the alleged contract price and the price he was required to pay for another truck.

On the 25th day of October, 1973, plaintiff signed a "Vehicle Buyer's Order" which was also signed by a salesman for the defendant company. The salesman advised the plaintiff that the truck would have to be ordered from the factory. From time to time the plaintiff contacted the salesman as to when the new truck would arrive. In March of 1974 the plaintiff met an officer of the company off the premises and casually asked him if his black truck had gotten there yet. The officer responded "No, we haven't heard on it yet." There was no further conversation. The record indicates that no further contact was made by the plaintiff with any officer of the defendant company until May of 1974 when the plaintiff did talk to an officer of the corporation who advised him that the price of the truck had increased and offered to sell the truck to the plaintiff for the increased price. The plaintiff refused to take the new truck. At this time an officer of the defendant company advised the plaintiff that the "Vehicle Buyer's Order" had never been signed or accepted by the company's sales manager or any officer of the company.

The "Vehicle Buyer's Order" was introduced into evidence and showed that just above the plaintiff's signature appeared the following words "THIS ORDER IS NOT VALID UNLESS SIGNED AS ACCEPTED HERE BY SALESMANAGER OR OFFICER OF THE COMPANY." The plaintiff testified that he knew that the sales manager or officer of the company had not signed the agreement but that he thought it was sufficient for the salesman who made out the order to sign the order. The trial court held that the "Vehicle Buyer's Order" was not a valid contract between the parties since it had not been accepted by the sales manager or an officer of the defendant company. The plaintiff, appellant herein, seeks a reversal of the judgment of the trial court and cites four grounds therefor which may be listed as follows:

1. Failure on the part of the company or an officer of the company to notify plaintiff of nonacceptance amounts to a ratification of the contract.

2. The defendant is estopped to deny the agency of the salesman and ratified the salesman's act in stating to the plaintiff that the order had been accepted by failure of the defendant to take some positive action to inform the plaintiff to the contrary.

3. The defendant was bound by the terms of the "Vehicle Buyer's Order" even if an officer of the company did not sign said order where it led the plaintiff to believe that the offer had been accepted by the acts of the salesman.

4. It was never intended that the "Vehicle Buyer's Order" be accepted in writing by an officer of the company.

In support of plaintiff's contention that failure to notify or silence amounts to an affirmance of the contract the plaintiff cites Restatement of Agency, Second, p. 244, Sec. 94:

Failure to Act as Affirmance:

a. Silence under such circumstances that, according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent, is evidence from which assent can be inferred. Such inference may be made although the purported principal had no knowledge that the other party would rely upon the supposed authority of the agent; his knowledge of such fact, however, coupled with his silence would ordinarily justify an inference of assent by him.

Plaintiff's reliance upon this section is not justified. The balance of Sec. 94 which was not quoted by the plaintiff reads as follows:

Whether or not such an inference is to be drawn is a question for the jury, unless the case is so clear that reasonable men could come to but one conclusion.

■ The trial court after hearing the evidence and observing the witnesses concluded that an inference from silence was not justified and ruled against the plaintiff. While this was not a jury question, it was a question for the trier of the fact and the trial court having rejected the contention, such ruling should not be upset upon appeal.

■ In further support of plaintiff's contention with regard to failure to notify of nonacceptance of the contract or ratification of the contract, plaintiff cites 3 Am.Jur.2d 565–6, Agency, Sec. 179. This section discusses the failure to promptly repudiate the agent's acts but points out that this duty arises only after information of the transaction is received by the principal. There is no evidence in the record that the defendant company knew of the acts of their agent. Therefore, plaintiff's first contention must be rejected.

The argument made with respect to estoppel to deny the agency of the salesman is this: The company ratified the salesman's act by stating to the plaintiff that the order had been accepted by failing to take some positive action to inform the plaintiff to the contrary.

■ Plaintiff's contention in this regard is without merit. The evidence in the record shows that the only notification to plaintiff that the order had been accepted came from the salesman of the defendant company and not from an officer or sales manager of the company. The company cannot be estopped by failing to take some positive action about a matter which the evidence shows the defendant's officer or sales manager had no knowledge. The authorities cited by plaintiff assume that the principal knows that another has purported to act as his agent, or after receiving information that an act had been done without actual or apparent authority is not bound by that act under the law of agency unless he ratifies the act. Ratification of an act about which the principal knows nothing is inherently impossible.[1]

■ With regard to plaintiff's contention that the defendant was bound by the terms of the "Vehicle Buyer's Order" even though an officer did not sign said order the plaintiff contends:

It is fundamental contract law that the parties may become bound by the terms of a contract even though they did not sign the contract, where they have have otherwise indicated their acceptance of the contract, or led the other party to so believe that they have accepted the contract.[2]

This is a sound principle of contract law but has no application in this case.

Plaintiff relies on the case of *Albright v. Stegeman Motor Car Company*,[3] which

1. Restatement of Agency, Second, Sec. 103–c, pp. 267 and 269. Also 3 Am.Jur. 563–4, Agency, Sec. 178.

2. 17 Am.Jur.2d, Sec. 70, pp. 408–409.

3. 168 Wis. 557, 170 N.W. 951 (1919).

case adopts the foregoing principle of contract law. *Albright* is easily distinguished from this case. The order form in the *Albright* case contained the clause:

> This proposal, if accepted, constitutes a contract, subject to the approval of the Stegeman Motor Car Company, at its office in Milwaukee, and must be countersigned by an officer of the company to be valid and in force.

This clause was placed in the order form for the same reason that the clause in the order form involved herein, to wit, that to make a binding contract that an officer of the company must accept the order form. In *Albright* there was no question of agency involved as there is in this case. The Stegeman Motor Car Company was a manufacturer of motor cars and trucks at Milwaukee. The plaintiff ordered the truck from the defendant and on one occasion paid the sum of $450 and on another occasion the sum of $500, took the company's receipt therefor and on the same date deposited in a like manner $1,150 more. After the order was placed the company entered upon the building of the truck, the plaintiff secured employment at the factory of the company in order that he could work on his truck and become familiar with its construction. The order required the truck to be delivered on or about April 1st. It was not completed April 1st nor for some time thereafter. On three different occasions the plaintiff served notice on the company that unless the truck was completed on various dates he would cancel the order. A final agreement between the plaintiff and the officers of the company was that if the truck should be delivered on the

12th of May, the plaintiff would be satisfied. On the 10th day of May the plaintiff left the factory and notified the company that he was going to cancel the order. The company refused to accept or honor the cancellation. The Supreme Court of Wisconsin held:

> Conceding that the order was never countersigned by an officer of the company as required by its terms, the inquiry is whether the company otherwise became bound thereon. It is undisputed that shortly after the date of the order the company started work on the truck to be delivered in fulfillment thereof, that the appellant was cognizant of the fact, that he secured work in the factory in order that he might work on "his" truck and become familiar with its construction, that delay in its completion was the subject of frequent complaint and discussion, and that he even had the truck out on trial trips. If this is not sufficient to indicate an acceptance of the order by the company, the receipt and retention by it of $450 down payment is certainly sufficient to estop it from denying its acceptance of the order.

The officers in *Albright* knew of the facts while here the defendant company had no knowledge of the facts, except through an agent who had no actual or apparent authority to accept the order.

Finally, plaintiff contends that it was never intended that the copy of the "Vehicle Buyer's Order" given to plaintiff would be accepted in writing by an officer of the company. The pertinent portion of the "Vehicle Buyer's Order" appeared as follows:

Salesman: _____ Clerk of Super** County

APPROVED BY _____ BY _____

THIS ORDER IS NOT VALID UNLESS SIGNED AS ACCEPTED HERE BY SALESMANAGER OR OFFICER OF THE COMPANY.

the undersigned prior to execution by the undersigned of this statement and that after such disclosure the undersigned specifically affirms(s) that the undersigned desire(s) to obtain the insurance for which an amount is included above.

BUYER'S SIGNATURE X _____ DATE

CO-BUYER'S SIGNATURE X _____ DATE

NOTICE TO THE BUYER. Do not sign this order before you read it or if it contains any blank spaces in the CREDIT SALE-DISCLOSURE STATE-MENT portion hereof if credit is extended. You are entitled to an exact copy of the order you sign.

BUYER ACKNOWLEDGES he has read and received a complete copy of this order comprising the entire agreement affecting this purchase.

A. Buyer Signs X _____ B. Co-Buyer Signs X

It will be noted that the "Vehicle Buyer's Order" was not signed by an officer of the corporation. However, the intention of the parties may be determined by the capital letters immediately above the plaintiff's signature. Most of the contract was printed in type of the size of the small print above set forth. Plaintiff cites 3 Am.Jur.2d, 479–481, Sec. 76, as supporting his position that the defendant company cannot claim that it was not intended that the "Vehicle Buyer's Order" be signed by an officer of the company in that it appeared that the company's salesman had the authority to perform the particular act, to wit, enter into the contract. It is clear, however, that in this instance the authority of the agent was specifically limited by the proposed contract itself.

This court in the case of *Ephraim Theatre Company v. Hawk*,[4] in considering the fundamental concepts in regard to contracts and the purpose for reducing to writing the conditions of the contract, held:

. . . It would defeat the very purpose of formal contracts to permit a party to invoke the use of words or conduct inconsistent with its terms to prove that the parties did not mean what they said, or to use such inconsistent words or conduct to demonstrate uncertainty or ambiguity where none would otherwise exist. Generally speaking, neither of the parties, nor the court has any right to ignore or modify conditions which are clearly expresesd merely because it may subject one of the parties to hardship, but they must be enforced "in accordance with the intention as . . . manifested by the language used by the parties to the contract."[5]

The defendant's motion to dismiss and dismissal of plaintiff's complaint were properly granted by the trial court. The decision below is affirmed. Costs to respondent.

HENRIOD, C. J., and TUCKETT, J., concur.

CROCKETT, Justice (dissenting):

It was the defendant who selected its salesman and entrusted him with the responsibility of procuring the plaintiff to sign the buyer's order, and he signed it himself, upon a representation to the plaintiff that he had a contract to purchase the truck.[1] In subsequent conferences about changes in price, similar representations were made to the plaintiff from October 25, 1973 until December of 1974, under the assumption that there was a binding contract. It was not until the impasse and disagreement occurred that the defendant then sprung the defense that the contract had not been accepted by an authorized company officer. It is a sound principle of law that one who claims a right to repudiate a contract must act with reasonable promptness or be deemed to waive that right. See *Scott v. Walton*, 32 Or. 460, 52 P. 180 (1898) where it is stated that a party "cannot retain the fruits of the contract awaiting future development to determine whether it will be more profitable for him to affirm or disaffirm it." And see statement in *Farrington v. Granite State Fire Ins. Co.*, 120 Utah 109, 119, 232 P.2d 754, 758 (1951).

It is repugnant to my sense of justice to permit the defendant to thus delude the plaintiff and keep him committed on a contract for all those months, then when the showdown comes, spring the proposition that the defendant was never bound anyway. I would reverse the judgment.

MAUGHAN, J., concurs in the dissenting opinion of CROCKETT, J.

ELLETT, J., having disqualified himself, did not participate herein.

4. 7 Utah 2d 163, 321 P.2d 221 (1958).

5. *Murphy v. Salt Lake City*, 65 Utah 295, 236 P. 680, 683.

1. Where loss must fall on one of two parties, it should be borne by the one who chose the party who created the circumstances out of which the loss arose. See *Harrison v. Auto Securities Co.*, 70 Utah 11, 257 P. 677; *Lake Creek Irrigation Co. v. Clyde*, 22 Utah 2d 222, 451 P.2d 375.