PROVO CITY, a Municipal Corporation of the State of Utah, Plaintiff and Respondent,

v.

Hubert C. LAMBERT, State Engineer of the State of Utah, Provo River Water Users Association, a corporation, Kennecott Copper Corporation, a corporation, Salt Lake City, a Municipal Corporation, Central Utah Water Conservancy District, Utah Lake Distributing Company, a corporation, United States of America, Bureau of Reclamation, Department of the Interior, Hugh McKellar, as Provo River Commissioner, and Provo Reservoir Water Users Company, a corporation, Defendants and Appellants.

No. 14605.

Supreme Court of Utah.

Jan. 24, 1978.

---

3. *In re Demiris*, 10 Utah 2d 405, 354 P.2d 97 (1960).

Robert B. Hansen, Atty. Gen., Dallin W. Jensen, Joseph Novak, James B. Lee, Roger F. Cutler, Ray L. Montgomery, Edward W. Clyde, Ramon M. Child, Rodney G. Snow, Salt Lake City, for defendants and appellants.

Jackson B. Howard, Provo, for plaintiff and respondent.

WILKINS, Justice:

Defendants appeal from judgment entered by the District Court for Utah County in favor of Plaintiff, Provo City, confirming the plaintiff's right to the use of 16.5 second feet of water from the Provo River. Affirmed. No costs are awarded.

In 1921 a decree commonly known as the "Provo River Decree" or "Morse Decree" (hereinafter referred to as the "Decree") was entered in the District Court of Utah County, which apportioned the waters of the Provo River among various users. That Decree grants to Provo City, plaintiff herein, certain rights to the water in various amounts and for various purposes. Paragraphs 4(a) and 4(b) of the Decree set forth Provo City's rights to use specific amounts of water for the purpose of irrigating 2558.-51 acres of land. The award set forth in paragraph 4(c) is in dispute here. That paragraph states:

> (c) 16.50 second feet, during the irrigation season of each and every year. Which water has heretofore been used for irrigation purposes by said City and for the generation of power by the Provo Ice & Cold Storage Company a corporation, E. J. Ward & Sons Company a corporation, Knight Woolen Mills a corporation, Smoot Investment Company a corporation, and Upton Hoover, W. E. Hoover, Webster Hoover and Frank Hoover as partners doing business under the name of Excelsior Roller Mills. And the said use for power purposes has been under license and grant from said Provo City and at such times and in such manner as has been made by mutual arrangements therefor.

This case is here for the second time on appeal. In 1972 plaintiff appealed from summary judgment granted to defendants. At that time this Court in substance found a material fact or facts to be at issue, reversed the summary judgment, and remanded the matter to the District Court for Utah County for the purpose of ascertaining those facts.[1] And it is important that the exact language in our first opinion concerning this reversal and instructions pertaining to remand be recited, and that language is:

It would seem to us that it would be helpful in making a proper determination and interpretation of what was intended by the language set forth in the Provo River Decree had the record contained some information as to what use, if any, the plaintiff had made of 16.50 second feet of water, since its use in the operation of the various mills has ceased. It is therefore ordered that this matter be remanded to the District Court with the recommendation that the court refer the matter to the State Engineer for a determination from the historical or other data, or from other investigation as to the use, if any, made of the water here in question.

As the State Engineer is an administrative officer who is most likely to have records which might be of use to the District Court, this Court on remand recommended that the matter be referred to that officer to compile data on the subject from an historical viewpoint and present it to the District Court for a determination of whether Provo City ever used the 16.5 second feet of water granted to it under paragraph 4(c) of the Provo River Decree for irrigation, and not exclusively for power purposes.

After remand the District Court referred the matter to the State Engineer, who held hearings, compiled data, and then filed his report, including his findings of fact, with the District Court in June of 1975. That Court took additional evidence and found that the State Engineer was substantially in error, found the facts to be other than those found by him, and entered judgment for the plaintiff.

Defendants are here now, appealing from that judgment.

The thrust of the defendants' arguments is that the State Engineer's findings are correct, and the Court's findings are erroneous.

In his report, the State Engineer made two findings of fact which were found to be in error at the trial on the issues by the District Court. Those findings, pertinent to the inquiry, were: (1) that the mills ceased operating by 1941, and (2) that there was no evidence that Provo City had ever irrigated more than 2558.6 acres of land.

In support of his position, the Engineer drew a hydrograph, using as data, weir measurements of water actually diverted into Provo City's channels, from 1930 to 1969, taken from the Provo River Water Commissioner's reports. The hydrograph also shows the amounts of water to which Provo City would be entitled during each of those years under paragraphs 4(a) and (b) and the amounts to which the plaintiff would be entitled under paragraphs 4(a), (b) and (c) if the 4(c) right were considered an irrigation right.

The hydrograph generally shows that an amount of water greatly exceeding the amounts to which Provo City was entitled under the Decree was diverted into its channels until approximately 1943; and from that time to 1962, the amount diverted dropped sharply, though it usually exceeded the amount granted under paragraphs 4(a) and 4(b) and sometimes reached and exceeded the total amount granted under 4(a) and (b) and (c). From 1962 to 1969 the total water diverted sometimes actually fell below the amount to which Provo City was entitled under paragraphs 4(a) and 4(b).

At the District Court, the State Engineer testified that he had based his finding that the mills ceased operating in 1941, on the testimony of Judge Maurice Harding, given

1. *Provo City Corp. v. Lambert*, 28 Utah 2d 194, 499 P.2d 1296 (1972).

at the Engineer's fact-finding hearing. Judge Harding had testified that he was elected Mayor of Provo City in 1941. The pertinent part of his testimony, from the transcript of the Engineer's hearing, follows:

Q. Do you have a recollection as to when the Mill race ceased to be used for power purposes?

A. No, I don't.

Q. Could you tell us within the years, say, five years, when the last mill utilized power from the water sources?

A. I'm afraid I can't. I can tell you when the woolen mills burned down, but I don't know when Smoot Lumber Company ceased to use power or when the Provo Brick and Tile Company ceased. Of course, the Provo Brick and Tile Company was just at the beginning of the Mill race.

Q. Well, would it be safe to say that all of the power uses were terminated before you were mayor?

A. Yes.

On the basis of such testimony, the Engineer found that the mills ceased operating by 1941, and because his hydrograph showed a sharp decrease of the diverted water in the early 1940's, concluded that the decrease was due to the cessation of the mills, and that, therefore, the 16.5 second feet granted under paragraph 4(c) of the Decree was for power purposes, and not for irrigation.

Plaintiff presented evidence at the District Court that the mills ceased operating not in 1941, but as early as 1930, and the Court made a specific finding of fact that:

"The State Engineer's report . . . is erroneous as to the date when the Mills ceased operation. . . . Consequently, the Court does not find a trend in the usage of the water as mentioned by the State Engineer in his report."

The District Court also found error in the Engineer's finding that "there was no evidence that Provo City had ever irrigated more than 2558.6 acres of land." Several witnesses testified at the Engineer's hearing that they remembered certain parcels of land, not included in the land set forth in the Decree, as having been irrigated in 1921.

■ As this is a case in equity we review the facts, as well as the law, and would reverse the District Court's judgment only if the evidence clearly preponderates against the Court's findings.[2]

We have reviewed the record, which consists of the transcript of the State Engineer's hearings as well as that of the trial on the issues at the District Court, together with voluminous exhibits, and we find, as the District Court did, that the State Engineer's findings are in large part based on questionable evidence. Further, there was evidence presented to the State Engineer at his hearing, in favor of the plaintiff's position, which he apparently disregarded. The evidence does not clearly preponderate against the District Court's findings.

■ The other arguments presented by defendants are also without merit. They first assert that the District Court had no authority to enter its own findings of fact, conclusions of law and judgment, but that by the remand of this Court, the District Court could only "certify those findings back to this Court such that this Court could determine whether the summary judgment should be affirmed, reversed or modified." We find no authority for this proposition, and believe the defendants have misinterpreted the prior opinion.[3]

■ Defendants' argument that the Court's Conclusions of Law are erroneous because they are based on erroneous findings of fact is without merit as we find that

---

2. Constitution of Utah, Art. VIII, Sec. 9; Rule 72(a) U.R.C.P.; *Stanley v. Stanley,* 97 Utah 520, 94 P.2d 465 (1939); *Foster v. Blake Heights Corp.,* Utah, 530 P.2d 815 (1974).

3. Defendants argue that the summary judgment was not reversed by this Court. Yet this Court found a material fact to be at issue. Rule 56(c) provides that summary judgment may be granted only if no genuine fact is at issue.

the Court's findings of fact are supported by the evidence.

Finally, Defendants' argument that the District Court's judgment has the effect of "awarding" to plaintiff a large block of water which will deprive junior appropriators, including these defendants, of their allocations of that water, is also without merit. In fact, the Engineer's decision in 1970 deprived plaintiff of an adjudicated water right, which plaintiff had held for more than 48 years. There is no evidence in the record that these defendants, or anyone else, have filed for the appropriation of that water, nor have they alleged that plaintiff has abandoned it through nonuse. Plaintiff was awarded the water under the Decree in 1921, and the District Court was asked to interpret that Decree. The Court has interpreted paragraph 4(c) to be an award for irrigation purposes, and not exclusively for power purposes, and there is substantial evidence in the record to support that interpretation.

ELLETT, C. J., and CROCKETT, MAUGHAN and HALL, JJ., concur.