2003 UT App 85

**Martin J. KUHRE and Sydnie W. Kuhre, Plaintiffs and Appellants,**

v.

**Kenneth GOODFELLOW and Susan Goodfellow, Defendants and Appellees.**

No. 20010924–CA.

Court of Appeals of Utah.

March 27, 2003.

Lincoln W. Hobbs and Kristen M. Johnson, Hobbs & Adondakis LC, Salt Lake City, for Appellants.

Nathan B. Wilcox and Stephen P. Horvat, Anderson & Karrenberg, Salt Lake City, for Appellees.

Before JACKSON, P.J., and BENCH and DAVIS, JJ.

## OPINION

BENCH, Judge:

¶1 Plaintiffs appeal from the trial court's grant of a motion to dismiss their complaint. Plaintiffs also appeal the trial court's award of attorney fees.

## BACKGROUND

¶2 Plaintiffs Martin and Sydnie Kuhre (the Kuhres) purchased a home from Defendants Kenneth and Susan Goodfellow (the Goodfellows). Following the purchase, the Kuhres allegedly discovered problems with the condition of the home. After further investigation, the Kuhres filed a complaint against the Goodfellows, the real estate agent, and the broker involved in the transaction. The claims against the real estate agent and broker were eventually settled or dismissed.

¶3 After the Kuhres filed an amended complaint (first amended complaint), the Goodfellows filed a motion to dismiss. The trial court denied the Goodfellows' motion and granted the Kuhres "leave to amend their Amended complaint one more time." The trial court also awarded the Goodfellows their attorney fees because their Motion to Dismiss "has merit [and] Plaintiffs' misrepresentation cause of action is not pled with specificity as required by Rule 9(b), [of the] Utah Rules of Civil Procedure."

¶4 Thereafter, the Kuhres filed a second amended complaint. The second amended complaint listed the following causes of action: (1) breach of warranties; (2) breach of contract; (3) confidential relations; (4) negligent and/or intentional misrepresentation; (5) negligence; and (6) rescission. The Goodfellows filed a motion to dismiss the second amended complaint. In response, the Kuhres filed an opposition memorandum that was twenty-two pages long, along with an ex parte motion for leave to file an over-length memorandum. The ex parte motion was denied and the trial court's order stated, "submit brief of proper length." The Kuhres then submitted an opposition memorandum that was thirteen pages long, but failed to request leave to file an over-length memorandum. The Goodfellows moved to strike this

memorandum. The trial court struck the Kuhres' opposition memorandum "for failure to conform to the ten page limitation set forth in Rule 4–501" and ordered that the second amended complaint be dismissed. The court ruled that "[t]he plaintiffs have failed to add additional substantive allegations in their Second Amended Complaint properly stating a claim against . . . the Goodfellows."

¶5 On January 13, 1999, the trial court entered judgment dismissing with prejudice the Kuhres' first four causes of action and certifying the judgment on those claims as final under rule 54(b) of the Utah Rules of Civil Procedure. On February 2, the Kuhres filed a petition for an interlocutory appeal pursuant to rule 5 of the Utah Rules of Appellate Procedure. On February 8, the Kuhres filed a notice of appeal stating that they were appealing the judgment entered on January 13, 1999 (the 54(b) judgment). The supreme court denied the petition for interlocutory appeal pursuant to rule 5 on April 14, 1999, and dismissed the appeal of the 54(b) judgment on December 10, 2001, for failure to file a docketing statement. Following the dismissal of the remaining defendants in an order granting summary judgment dated October 18, 2001, the Kuhres filed this appeal on November 15, 2001.

## ISSUES AND STANDARDS OF REVIEW

■ ¶6 The Goodfellows challenge our jurisdiction over this appeal. "Whether appellate jurisdiction exists is a question of law . . . ." *Pledger v. Gillespie*, 1999 UT 54, ¶16, 982 P.2d 572.

■ ¶7 The Kuhres raise three questions for review. First, did the trial court err in dismissing, without prejudice, their first amended complaint? Second, did the trial court err in granting the Goodfellows' motion to dismiss the Kuhres' second amended complaint with prejudice? "In reviewing a ruling on a motion to dismiss, we ' "accept the factual allegations in the complaint as true and draw all reasonable inferences from those facts in a light most favorable to [the] plaintiff[s]." ' " *Nebeker v. Utah State Tax*

*Comm'n,* 2001 UT 74,¶ 2, 34 P.3d 180 (citations omitted).

■ ¶ 8 Finally, did the trial court err in awarding the Goodfellows their attorney fees based upon the trial court's "conclusion that the motion to dismiss [the first amended complaint] 'has merit,' despite the absence of a finding of bad faith"? "Whether attorney fees are recoverable . . . is a question of law, which we review for correctness." *Valcarce v. Fitzgerald,* 961 P.2d 305, 315 (Utah 1998).

## ANALYSIS

### I. Jurisdiction

■ ¶ 9 The Goodfellows dispute whether we have jurisdiction over this appeal, arguing that the Kuhres' appeal is untimely. The Goodfellows claim that all the "matters challenged in this appeal were resolved on January 13, 1999, in a judgment designated as final pursuant to Rule 54(b)." The Goodfellows argue that because the Kuhres failed to pursue their earlier rule 54(b) appeal, they are now precluded from bringing the same issues in this appeal.

■ ¶ 10 "The initial question of whether an order is eligible for certification under rule 54(b) . . . is a question of law." *Kennecott Corp. v. Utah State Tax Comm'n,* 814 P.2d 1099, 1100 (Utah 1991). "Rule 54(b) of the civil rules permits the trial court to certify certain interlocutory orders and, by so doing, force the appellate court to entertain the appeal." *Id.; see also* Utah R. Civ. P. 54(b). In determining whether a trial court's rule 54(b) certification is proper, we " 'focus[ ] on the degree of factual overlap between the issue[s] certified for appeal and the issues remaining in the district court.' " *Kennecott,* 814 P.2d at 1103 (quoting *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.,* 860 F.2d 1441, 1445 (7th Cir.1988)). "When this factual overlap is such that separate claims appear to be based on the same operative facts or on the same operative facts

with minor variations, they are held not to constitute separate claims for rule 54(b) purposes." *Id.; see also FMA Leasing Co. v. Citizens Bank,* 823 P.2d 1065, 1066 (Utah 1992).

¶ 11 In the case before us, the 54(b) judgment dismissed the Kuhres' claims for breach of warranties, breach of contract, confidential relations, and negligent/intentional misrepresentation. These claims all relate to the Kuhres' purchase of the Goodfellows' home. The Goodfellows argue that the rule 54(b) certification was proper because the remaining claims of negligence and rescission require the Kuhres to prove facts unnecessary to the claims dismissed in the 54(b) judgment. In light of the supreme court's decision in *Weiser v. Union Pacific R.R. Co.,* 932 P.2d 596, 597–98 (Utah 1997), it is inappropriate to place an emphasis on a variation of specific facts needed to prove a claim, such as the Goodfellows do in this case, while ignoring the factual overlap of the overriding operative facts. *See also Kennecott,* 814 P.2d at 1103.

¶ 12 In the docketing statement filed in this appeal, the Kuhres stated that "[b]ecause the [rule 54(b) ] appeal . . . was taken from an order rendered prior to resolution of all issues in the case between all parties, the Kuhres will file a motion to dismiss that appeal." Four days later, the supreme court dismissed sua sponte the rule 54(b) appeal for failure to file a docketing statement. In light of this dismissal, the factual overlap of the dismissed and remaining claims, and the "principle . . . that interlocutory appeals should be avoided because they present appellate courts with multiple appeals involving narrow issues taken out of . . . context[, which] slow down the final determination of . . . matter[s]," we have jurisdiction over this appeal.[1] *Kennecott,* 814 P.2d at 1101.

### II. The First Amended Complaint

■ ¶ 13 The Kuhres first argue that "the trial court erred in dismissing, without preju-

---

1. We note that the trial court failed to enter adequate findings supporting its conclusion that the order was final and certifiable under rule 54(b). *See Bennion v. Pennzoil Co.,* 826 P.2d 137, 139 (Utah 1992) ("In order to facilitate this court's review of judgments certified as final

under rule 54(b), trial courts should . . . enter findings supporting the conclusion that such orders are final. The findings should explain the lack of factual overlap between the certified and remaining claims and thus satisfy the *Kennecott* criterion for certification to be proper.").

dice, ... [their first] amended complaint." We disagree. The trial court dismissed the first amended complaint "without prejudice" and allowed the Kuhres to file a second amended complaint. By filing their second amended complaint, the Kuhres waived the right to challenge the dismissal of the first amended complaint because an "amended pleading supercedes the original pleading, and the original pleading performs no function." *Campbell, Maack & Sessions v. Debry*, 2001 UT App 397, ¶ 17 n. 4, 38 P.3d 984; *see also Abrams v. Watchtower Bible & Tract Soc.*, 306 Ill.App.3d 1006, 240 Ill.Dec. 111, 715 N.E.2d 798, 804 (1999) (stating that "[a] party who files an amended complaint waives any objection to the ... court's ruling on the former complaint").

### III. The Second Amended Complaint

¶ 14 The Kuhres next argue that the trial court erred in dismissing their second amended complaint with prejudice. The Kuhres claim that the "second amended complaint clearly met the pleading requirements."

¶ 15 In granting the Goodfellows' Motion to Dismiss the second amended complaint, the trial court concluded that the Kuhres "failed to add additional substantive allegations properly stating a claim against the Goodfellows in the restated first, second, third, and fourth causes of action ... and they are, therefore, dismissed."[2] "[F]or purposes of reviewing the dismissal of plaintiffs' amended complaint, we accept as true the factual allegations in plaintiffs' amended complaint, and we analyze whether a cognizable claim for relief has been stated." *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 39, 54 P.3d 1054.

### A. Breach of Warranties and Breach of Contract

¶ 16 The Kuhres' claim that their "second amended complaint clearly met the pleading

requirements." The Kuhres, however, fail to set forth the pleading requirements for either a breach of warranties or breach of contract claim and fail to state how their pleadings in the second amended complaint adequately met these requirements. Accordingly, we decline to address whether the trial court erred in dismissing these claims. *See State v. Bishop*, 753 P.2d 439, 450 (Utah 1988) (stating that appellate courts are " 'not simply a depository in which the appealing party may dump the burden of argument and research' ") (quoting *Williamson v. Opsahl*, 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 416 N.E.2d 783, 784 (1981)), *overruled on other grounds by State v. Menzies*, 889 P.2d 393 (Utah 1994); *see also Associated Gen. Contractors v. Board of Oil, Gas and Mining*, 2001 UT 112, ¶ 37 n. 8, 38 P.3d 291 (listing twenty-two cases where a party inadequately briefed an argument).

### B. Confidential Relations

¶ 17 The Kuhres next argue that their "confidential relations claim was improperly dismissed." The Kuhres cite to *Webster v. Lehmer*, 742 P.2d 1203 (Utah 1987), as support for their argument that a confidential relationship existed in this case and that the "similar facts in this case mandate that the confidential relationship issue be determined by a jury." In *Webster*, the vendor sought to rescind a real estate contract with a purchaser because of undue influence. *See id.* at 1203–04. The supreme court found "[a]mple evidence ... to sustain the finding of the trial court that a confidential relationship existed." *Id.* at 1207. The court then went on to conclude that "a presumption of undue influence was established" that the purchaser failed to overcome, therefore, the transaction was rescinded because it was unfair to the seller. *Id.*

¶ 18 " 'A confidential relationship arises when one party, having gained the trust and confidence of another, exercises extraordinary influence over the other par-

---

**2.** We note in passing that under rule 52 of the Utah Rules of Civil Procedure a court "shall ... issue a brief written statement of the ground for its decision on all motions granted under Rule 12(b) ... when the motion is based on more than one ground." Utah R. Civ. P. 52(a). The Good-

fellows' Motion to Dismiss cites to both rule 12(b) and rule 9(b) as reasons for the trial court to dismiss the Kuhres' complaint. The trial court should therefore have been clearer as to the ground for its ruling.

ty.'" *Id.* at 1206 (quoting *Von Hake v. Thomas,* 705 P.2d 766, 769 (Utah 1985)). This doctrine "'rests upon the principle of inequality between the parties.'" *Id.* (quoting *Bradbury v. Rasmussen,* 16 Utah 2d 378, 383, 401 P.2d 710, 713 (1965)). "'Mere confidence [, however,] in one person by another is not sufficient alone to constitute such a relationship.'" *Id.* (quoting *Bradbury,* 16 Utah 2d at 383, 401 P.2d at 713). Furthermore, "[u]nder Utah law, the general rule is no fiduciary obligations exist between a buyer and seller of any property." *Dugan v. Jones,* 615 P.2d 1239, 1248 (Utah 1980); *see also Cole v. Parker,* 5 Utah 2d 263, 268, 300 P.2d 623, 626 (1956) (stating that "[e]xcept under special circumstances, no fiduciary obligations exist between a buyer and seller of any property").

¶ 19 The Kuhres alleged, inter alia, the following in their second amended confidential relations claim: (1) "The Goodfellow Defendants . . ., by virtue of their express and implied commitments to the plaintiffs, and by virtue of their conduct in repeatedly representing the fact that they were looking out for the Kuhres, occupied positions of trust and assumed confidential relationships with the plaintiffs"; (2) "These defendants also sought to and did obtain the trust and confidence of the Kuhres" and then "exercise[d] undue influence over the Kuhres"; (3) The Goodfellows, "managed through their repeated assurances and stated commitments to the Kuhres, to convince the Kuhres that [they] could and should be trusted"; (4) The Goodfellows "failed to disclose . . . defects and deficiencies known or which should have been known by them . . . in breach of their fiduciary duties"; and (5) "Defendant Adam Nash [who was subsequently dismissed from the proceedings] [owed] additional duties to the Kuhres as a result of his pre-existing relationship with Martin Kuhre and the trust engendered thereby."

¶ 20 The facts alleged by the Kuhres, even when assumed to be true, do not rise to the level of a confidential relationship and are not similar to those found in *Webster.* In *Webster,* the supreme court found a confidential relationship because of the "attorney-client indicia" that existed between the pur-

chaser and seller. *Webster,* 742 P.2d at 1207. The purchaser had counseled the seller and his wife at least twice "in the capacity of an attorney." *Id.* The purchaser used her "expertise as an attorney" and the trust given her by the seller, to her advantage by not disclosing the true status of the property she was seeking to purchase. *Id.* The purchaser even included attorney fees for drafting the sale agreement "as part of the consideration paid for the property." *Id.* In the case before us, no per se confidential relationship like the attorney-client relationship existed between the Goodfellows and the Kuhres. Nor do the pleadings indicate any "special circumstances," *Cole,* 5 Utah 2d at 268, 300 P.2d at 626, so as to overcome the "general rule [that] no fiduciary obligations exist between a buyer and seller of any property." *Dugan,* 615 P.2d at 1248.

¶ 21 Finally, the Kuhres argument that the trial court "should not be allowed to make fact-intensive determinations as to whether or not a confidential relationship existed" is unavailing. In the instant case, the Kuhres' amended pleadings conclude that a confidential relationship existed, and that the Goodfellows violated this relationship, without reciting enough facts to create such a relationship. "[M]ere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient to preclude dismissal. . . ." *Chapman v. Primary Children's Hosp.,* 784 P.2d 1181, 1186 (Utah 1989). Accordingly, we conclude that the trial court did not err in dismissing the Kuhres' confidential relations claim.

## C. Negligent/Intentional Misrepresentation

¶ 22 "[I]n order to prevail on a claim of fraud [or misrepresentation], all the elements of fraud must be established by clear and convincing evidence." *Secor v. Knight,* 716 P.2d 790, 794 (Utah 1986). These elements include:

"(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representer either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge on which to base such representation; (5) for the purpose of inducing the other

party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage." *Id.* (quoting *Dugan,* 615 P.2d at 1246). For a fraud claim to be properly brought, "the circumstances constituting fraud or mistake shall be stated with particularity." Utah R. Civ. P. 9(b).

¶ 23 The Kuhres' amended complaint alleges, inter alia, the following: (1) Mr. Goodfellow told the Kuhres that he had seen an engineer's report indicating that the home was in "perfect condition"; (2) Mr. Goodfellow never saw such a report and his statement that he did was at least a reckless misrepresentation; (3) Mr. Goodfellow told the Kuhres that "he had received and reviewed a property inspection report in connection with the previous offer on the home, and that he would provide a copy to the plaintiffs" to save them money; (4) Mr. Goodfellow never did provide an inspection report; (5) but for the Goodfellows' representations, the Kuhres would have obtained an independent professional inspection of the property; (6) Mr. Goodfellow told the Kuhres that the previous potential buyer "had withdrawn from the sale based upon her ... relocation to another country"; (7) the previous potential buyer, however, withdrew because of concerns with the home; (8) due to Mr. Goodfellow's representations regarding the previous buyer the Kuhres were unable to contact this individual; (9) Mr. Goodfellow stated that the home had no leaks; (10) following closing, the Kuhres obtained an inspection report indicating water damage that "must have [been] known" by the Goodfellows before closing; (11) upon inspection of the home by experts following closing, other significant problems were discovered including settling, cracks, and soil problems; (12) these problems were undiscoverable by a reasonable inspection by the Kuhres at or before the time of purchase; (13) the Goodfellows knew or should have known about these defects in the home; (14) the Kuhres relied on the Goodfellows' representations about the home; and (15) the representations made by the Goodfellows were material to the Kuhres' purchase of the home.

¶ 24 The Goodfellows correctly state that a fraud allegation made on information and belief is adequate under rule 9(b), "as long as it includes the facts upon which the belief is based." *Arena Land & Inv. Co. v. Petty,* 906 F.Supp. 1470, 1476 (D.Utah 1994). In the case before us, the Kuhres include sufficient facts upon which they base their belief. For example, the Kuhres allege a specific conversation with Mr. Goodfellow wherein he stated that he had reviewed an engineer's report about the home and that the "home [was] in perfect condition except for an upper deck railing that has been repaired." They also specifically allege statements made by the Goodfellows regarding false reasons why a previous potential buyer withdrew from purchasing the home.

¶ 25 After viewing " 'the factual allegations ... as true and consider[ing] them, and all reasonable inferences to be drawn from them, in the light most favorable to' " the Kuhres, we conclude that the Kuhres have presented a cognizable claim for relief. *Waddoups v. Amalgamated Sugar Co.,* 2002 UT 69, ¶ 38, 54 P.3d 1054 (citation omitted). The trial court, therefore, erred in dismissing the Kuhres' Negligent/Intentional Misrepresentation claim.

## IV. Attorney Fees

¶ 26 The Kuhres argue that the trial court erred in awarding attorney fees that the Goodfellows incurred in defending the first amended complaint "based only upon the [trial] court's conclusion that the motion to dismiss 'has merit.' " The trial court's decision is sustainable under *Lake Creek Irrigation Co. v. Clyde,* 22 Utah 2d 222, 451 P.2d 375 (1969). In *Lake Creek,* the supreme court concluded that the trial court did not abuse its discretion in awarding attorney fees "as a condition to the granting" of a motion to dismiss without prejudice. *Id.* at 226, 451 P.2d at 378. In the instant case, the trial court concluded that the Goodfellows' motion to dismiss "has merit," but instead of dismissing with prejudice, the court allowed the Kuhres to amend their complaint. Accordingly, the trial court did not err in awarding the Goodfellows' their attorney fees when it

allowed the Kuhres to amend their complaint because " '[a] trial judge is accorded broad discretion in determining how a [case]. shall proceed in his or her courtroom.' " *Hartford Leasing Corp. v. State,* 888 P.2d 694, 702 (Utah Ct.App.1994) (alterations in original) (citation omitted).

## CONCLUSION

¶ 27 We conclude that the trial court did not err in dismissing the Kuhres' first amended complaint and the first three causes of action in their second amended complaint, or in awarding the Goodfellows their attorney fees. We conclude, however, that the trial court did err in dismissing the Kuhres' Negligent/Intentional Misrepresentation cause of action. Accordingly, we affirm in part and reverse in part. The parties are to bear their own costs on appeal.

¶ 28 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JAMES Z. DAVIS, Judge.